C. R. KLEWIN NORTHEAST, LLC *v.*
STATE OF CONNECTICUT
(SC 18609)

Rogers, C. J., and Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 22—officially released December 7, 2010

*Robert E. Wright*, for the appellant (plaintiff).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

ROGERS, C. J. This appeal requires us to determine what constitutes adequate notice of a claim under Gen-

eral Statutes § 4-61 (a),[1] a provision that waives the state's sovereign immunity to allow actions against the state for disputes arising from construction contracts. The plaintiff, C. R. Klewin Northeast, LLC, appeals[2] from the trial court's judgment in favor of the defendant, the

---

[1] General Statutes § 4-61 (a) provides: "Any person, firm or corporation which has entered into a contract with the state, acting through any of its departments, commissions or other agencies, for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract or claims arising out of the awarding of a contract by the Commissioner of Public Works, bring an action against the state to the superior court for the judicial district of Hartford for the purpose of having such claims determined, *provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department administering the contract within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier.* No action on a claim under such contract shall be brought except within the period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends three years after the acceptance of the work by the agency head of the department administering the contract evidenced by a certificate of acceptance issued to the contractor or three years after the termination of the contract, whichever is earlier. Issuance of such certificate of acceptance shall not be a condition precedent to the commencement of any action. Acceptance of an amount offered as final payment shall not preclude any person, firm or corporation from bringing a claim under this section. Such action shall be tried to the court without a jury. All legal defenses except governmental immunity shall be reserved to the state. In no event shall interest be awarded under section 13a-96 and section 37-3a by a court or an arbitrator to the claimant for the same debt for the same period of time. Interest under section 37-3a shall not begin to accrue to a claimant under this section until at least thirty days after the claimant submits a bill or claim to the agency for the unpaid debt upon which such interest is to be based, along with appropriate documentation of the debt when applicable. Any action brought under this subsection shall be privileged in respect to assignment for trial upon motion of either party." (Emphasis added.)

[2] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

state of Connecticut, following the court's dismissal of the plaintiff's complaint. In dismissing the complaint, the trial court reasoned that, because the plaintiff had failed to comply properly with the notice requirement of § 4-61 (a), its claim against the state was barred by sovereign immunity and, therefore, the court lacked subject matter jurisdiction. We agree with the plaintiff that the trial court improperly concluded that the notice given by the plaintiff was inadequate and, accordingly, reverse the court's judgment.

The following facts, which were found by the trial court following an evidentiary hearing,[3] and procedural history are relevant to this appeal. On October 6, 1998, the plaintiff entered into a contract with the state department of public works (department) to construct or alter certain buildings at Manchester Community College. While performing the contract, the plaintiff encountered various delays and change orders that caused it to incur additional expenses.

On August 31, 2001, approximately nine months after the completion of the project,[4] the plaintiff sent Richard Piotrowski, the department's bureau chief of facilities, design and construction, a detailed communication requesting that it be paid an additional $2,678,256 for contract overruns.[5] On April 15, 2004, after attempts to

---

[3] "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts." *Conboy* v. *State*, 292 Conn. 642, 652, 974 A.2d 669 (2009). "An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Internal quotation marks omitted.) Id., 653–54.

[4] Although the project was substantially complete in November, 2000, a certificate of completion was not issued until December 23, 2004.

[5] The communication was comprised of a sixteen page letter, describing in meticulous detail the delays that the plaintiff had experienced on the project, and it was accompanied by hundreds of pages of supporting documentation.

obtain compensation for the overruns failed, Michael D'Amato, the plaintiff's president, hand delivered a letter to James T. Fleming, the department's commissioner. The April 15, 2004 letter began by "request[ing] [Fleming's] assistance in resolving an issue that has been pending since August 31, 2001," and proceeded to identify the contract, project and amount and cause of the overruns.[6] After referring to the August 31, 2001 submission to the department and detailing the plaintiff's futile efforts to receive payment despite repeated assurances that the submission was being processed,[7] the plaintiff concluded its letter by emphasizing that it "has been extremely patient waiting for payment. We have not submitted a claim requesting interest, home office overhead or other items. We have worked within the system and have followed all the rules. We have been out of pocket more than $2,000,000 since Novem-

---

[6] The April 15, 2004 letter provided in relevant part: "In October, 1998 [the plaintiff] was awarded the general contract for the construction of the New Learning Resource Center at [Manchester Community College] in the amount of $19,922,000.

"The contract had a completion date of June 2000, a duration of 598 days.

"Due to numerous changes not the fault of [the plaintiff] the project achieved substantial completion on November 27, 2000—773 days."

[7] The April 15, 2004 letter continued: "On August 31, 2001, [the plaintiff] submitted to [the department] a request for an equitable adjustment to the contract in the amount of $2,678,256."

"In February, 2002, the accounting firm of Scillia Dowling Natarelli completed its review of the request and recommended a change order be approved in the amount of $1,535,518.

"In March, 2002, [the plaintiff] submitted three change orders to [the department] totaling the agreed to amount of $1,535,518.

"In May, 2002, we were informed that the change orders were approved and are awaiting funding.

"In November, 2003, Bruce Bockstael informed me that he had our file and was reviewing it.

"In January, 2004, we learned that the payment would be included with a package going to the bond commission.

"In March, 2004, we were informed that the package which included our change order was not funded, due to an issue unrelated to our request.

"Recently, we have been informed that the package, including our request, will be resubmitted to the bond commission at the next meeting."

ber, 2000. This has caused a significant impact on our business. All we ask is to be treated fairly and honestly and that payment due us be made."

Following receipt of the plaintiff's April 15, 2004 letter, Fleming directed David O'Hearn, the department's deputy commissioner, to request additional documentation from the plaintiff and, thereafter, to meet with the plaintiff to discuss its request for additional payment. In an April 28, 2004 letter to D'Amato, O'Hearn stated: "We have located your original submission of August 31, 2001, and I have asked the project manager to review the notebook and comment." The plaintiff replied on May 4, 2004, by providing a copy of a change order proposal dated March 14, 2002, and Joel Baranowski, a state project manager, responded on June 7, 2004, with a list of questions. D'Amato, O'Hearn and Baranowski then met in September, 2004, to discuss the plaintiff's request. The minutes of that meeting reflected that the plaintiff had hired a claims consultant who valued the claim at more than $5 million, but that the plaintiff was willing to accept $1.2 million in compromise. On September 20, 2004, Fleming contacted Marc Ryan, the secretary of the office of policy and management, to recommend discussion of the plaintiff's claim, and both Fleming and the attorney general recommended to Governor M. Jodi Rell (governor) that the plaintiff be paid. On March 8, 2005, the governor authorized the department to settle the plaintiff's claim for $1.2 million.[8] Nevertheless, the plaintiff was never paid.

On November 27, 2007, the plaintiff filed the present action pursuant to § 4-61 (a).[9] On January 28, 2008, the

---

[8] General Statutes § 3-7 (c) provides in relevant part: "Upon the recommendation of the Attorney General, the Governor may authorize the compromise of any disputed claim by or against the state or any department or agency thereof, and shall certify to the proper officer or department or agency of the state the amount to be received or paid under such compromise. . . ."

[9] Prior to filing the present action, the plaintiff sought a writ of mandamus ordering the governor, Fleming and Nancy Wyman, the state comptroller, to pay the plaintiff the agreed upon $1.2 million. Although a trial court ruled

state filed a motion to dismiss the action for lack of subject matter jurisdiction. Specifically, the state claimed that the court lacked jurisdiction because the plaintiff had failed to comply with the notice provision of § 4-61 (a). The plaintiff objected to the motion to dismiss, claiming that it had given the requisite notice, and requested a hearing to resolve the factual dispute. The trial court heard oral argument and received evidence on October 30, 2008, and held a hearing on November 25, 2008, at which witnesses testified and further evidence was submitted.

Thereafter, the trial court granted the state's motion to dismiss, concluding that the state had not received sufficient statutory notice of the plaintiff's claim. As to the plaintiff's August 31, 2001 communication, the court noted that it had not been delivered to Fleming, who was the head of the department, as required by § 4-61 (a).[10] As to the April 15, 2004 letter, the court reasoned that "[n]o reference to any intent to pursue a claim, pursuant to § 4-61, or by suit or arbitration, is contained in this letter." The trial court analogized to jurisprudence concerning notice provisions in other statutes unrelated to state contracts and held that, "under § 4-61, providing the head of the agency with details about a request for an adjustment to a contract or about a contract dispute is insufficient. A purported notice is insufficient under § 4-61 if it lacks an essential element: notice of intent to pursue a claim for damages, either by an action in court or through an arbitration claim."

in favor of the plaintiff in that matter, we reversed the court's judgment after concluding that the governor's approval of payment did not create a mandatory duty in Fleming and Wyman to remit the funds to the plaintiff and, therefore, that the action was barred by sovereign immunity. See *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 267, 932 A.2d 1053 (2007). In defending the mandamus action, the governor, Fleming and Wyman argued, inter alia, that the plaintiff had other adequate remedies at law, specifically, an action pursuant to § 4-61. Id., 255, 257.

[10] The plaintiff does not contest this determination on appeal.

The trial court acknowledged testimony from both Fleming and O'Hearn confirming "that, in 2004, [the plaintiff] was claiming that the state owed [the plaintiff] money on the [Manchester Community College] project, and provided information in support of its claim to [the department]; and that [the department] conducted an investigation which led to the recommended settlement," but concluded that the officials' testimony did "not amount to evidence that [the plaintiff] provided a notice of claim that met the statutory requirements." The trial court concluded further that the April 15, 2004 letter did not provide the factual basis for the plaintiff's claim as required by § 4-61 (a). The trial court then dismissed the plaintiff's complaint. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly concluded that § 4-61 (a) required it to notify Fleming explicitly that it intended to pursue its claim either in court or in arbitration. It argues that the statute provides only that a contractor give the head of a department advance written notice of the claim itself and of its factual basis. The plaintiff argues additionally that its April 15, 2004 letter to Fleming conveyed the factual basis of its claim as required by § 4-61 (a).[11] We agree with the plaintiff.

We begin with standards governing the trial court's dismissal of the plaintiff's complaint and our review of that decision. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn.

[11] The plaintiff argues alternatively that a legal complaint that it subsequently filed also constituted sufficient notice of its claim pursuant to § 4-61. Because we agree that the April 15, 2004 letter provided adequate notice to Fleming, we need not consider this argument.

695, 706, 987 A.2d 348 (2010). "[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." (Internal quotation marks omitted.) Id.

"It is a well-established rule of the common law that a state cannot be sued without its consent." (Internal quotation marks omitted.) Id. Accordingly, "a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity." (Internal quotation marks omitted.) Id. Moreover, "when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . ." (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 8, 946 A.2d 1219 (2008). "Thus, a party [seeking] to litigate or arbitrate a disputed claim arising under a public works contract bears the burden of proving that the claim fits precisely within the narrowly drawn reach of § 4-61." Id., 9.

The plaintiff does not contest the findings of fact made by the trial court in connection with the defendant's motion to dismiss, but rather, the court's interpretation of § 4-61 (a) and its application of the statute to the facts found. The plaintiff's claims, therefore, present issues of statutory construction over which our review is plenary. Id., 7. When we construe a statute, "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall

not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretative guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 8. "The test to determine ambiguity is whether the [statutory term], when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Hicks* v. *State*, 297 Conn. 798, 801, 1 A.3d 39 (2010).

The plaintiff argues first that the trial court improperly construed § 4-61 (a), contrary to its plain language, to require a party providing notice under that provision to inform a commissioner explicitly of its intention to bring an action. We agree. The relevant portion of § 4-61 (a) provides that any "corporation which has entered into a contract with the state, acting through any of its departments . . . for the . . . construction . . . or alteration of any . . . building or other public works of the state . . . may, *in the event of any disputed claims under such contract . . . bring an action against the state . . . for the purpose of having such claims determined, provided notice of each such claim under such contract and the factual bases for each such claim shall have been given in writing to the agency head of the department* administering the contract within [a certain prescribed time period]." (Emphasis added.)

In concluding that the April 15, 2004 letter to Fleming was insufficient to invoke the waiver of immunity afforded by § 4-61, the trial court reasoned, in part, that the phrase "notice of each such claim" in § 4-61 (a) meant notice of the plaintiff's intent to bring an action. Although it is true that in typical usage; see General Statutes § 1-1 (a); the term "claim" can mean either "[a]

cause of action"; Black's Law Dictionary (6th Ed. 1990); or merely an asserted "[r]ight to payment," in whatever form; id.; we think it is clear that the legislature, as to the notice requirement, intended notice of the right to payment only. Specifically, although § 4-61 (a) confers, in the same sentence containing the notice provision, the right to commence an "action," the legislature, when describing the content of the prerequisite notice, chose to use a different term, "claim." We often have observed that "[t]he use of the different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 850, 937 A.2d 39 (2008); see also *Bruttomesso* v. *Northeastern Connecticut Sexual Assault Crisis Services, Inc.*, 242 Conn. 1, 13, 698 A.2d 795 (1997); *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981) (use of different terms within same sentence of statute "plainly" implies different meanings intended).[12] Additionally, if the legislature had intended to require that a contractor provide notification of its intent to bring an action, it could have said so explicitly, as it has in other statutes. See, e.g., General Statutes § 7-465 (a) (disallowing action against municipality or its employee unless, inter alia, "written notice *of the intention to commence such action* . . . has been filed with the clerk of such municipality" [emphasis added]). Finally, we have reviewed the case law on which the trial court

---

[12] Subsection (b) of § 4-61, which confers on public works contractors the right to demand arbitration, makes a similar distinction. It affords a party the right to "submit a demand for arbitration of [a] claim or claims" if timely "notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract . . . ." General Statutes § 4-61 (b). Notably, subsection (b) does not require a party to give notice of its intent to demand arbitration.

relied, and we are not persuaded that it imposes upon plaintiffs who commence an action pursuant to § 4-61 a notice requirement that is not present in, and in fact is contradicted by, the plain language of § 4-61.[13] On the basis of the foregoing, we conclude that the notice contemplated by § 4-61 does not require an explicit statement of intent to bring an action against the state. Rather, it is sufficient if a contractor provides factually adequate written notice to a department head that it is asserting a right to payment of money that it believes it is owed. Here, the plaintiff's April 15, 2004 letter clearly asserts such a right.

---

[13] The trial court relied on *Warkentin* v. *Burns*, 223 Conn. 14, 15, 610 A.2d 1287 (1992), and *Salgado* v. *Commissioner of Transportation*, 106 Conn. App. 562, 564, 942 A.2d 546 (2008), which concerned the notice requirement of General Statutes § 13a-144, a provision that waives the state's immunity to allow actions for personal injury or property damage caused by defective highways, bridges or sidewalks, and *Chambers* v. *Electric Boat Corp.*, 283 Conn. 840, 842, 930 A.2d 653 (2007), which involved the notice requirement of General Statutes § 31-294c, a provision that imposes time limitations for filing workers' compensation claims. Both statutes contain notice requirements. In each case, the court held that the plaintiff had failed to provide the statutorily required notice.

Even if we assume that state public works contract disputes are sufficiently analogous to defective highway and workers' compensation disputes, so as to make the reasoning in the foregoing cases applicable, the holdings in those decisions are narrower than the trial court's memorandum of decision suggests. Particularly, in none of the decisions did the injured party or his representative provide timely notice that was deemed insufficient due to its failure to pronounce explicitly an intent to sue. Rather, in the defective highway cases, the plaintiffs had failed to provide any timely notice at all and, instead, had relied on information provided either by, or to, third parties. See *Warkentin* v. *Burns*, supra, 223 Conn. 17 and n.5 (decedent's representative claimed notice was provided by police report and letters to defendant from state legislators and citizen requesting prioritized attention to highway where accident occurred); *Salgado* v. *Commissioner of Transportation*, supra, 106 Conn. App. 569–70 (although truck driver provided notice as to his personal injuries only, truck owner claimed notice of claim for property damage was provided by truck driver's notice and police report). In the workers' compensation case, the purported notice to the defendant employer was a claim seeking federal benefits, which in no way indicated the claimant's intent to pursue compensation under the state Workers' Compensation Act. See *Chambers* v. *Electric Boat Corp.*, supra, 283 Conn. 856–57.

The plaintiff's second argument concerns the amount of factual information that must accompany a notice of claim under § 4-61 (a). Again, we begin with the statutory language. Section 4-61 (a) requires written notice of "each such claim under such contract and the factual bases for each such claim," but does not elaborate further on the level of detail required. Because it is unclear from the statutory language whether the plaintiff's April 15, 2004 letter provided adequate factual detail, we look to the legislative history of § 4-61 and the circumstances surrounding its enactment to determine the legislature's intent.

"Prior to the enactment of § 4-61, suits against the state by contractors were not countenanced because of sovereign immunity. Individualized legislative authorization to sue was required to be sought by petition before an action could be brought against the state. . . . In 1957, the legislature enacted § 4-61 to reduce the number of petitions for permission to sue the state that it received involving suits over state construction contracts. . . . Another reason for allowing parties who had contracted with the state to sue the state directly without seeking legislative authorization was the hope that affording contractors the right to sue would reduce the costs of construction projects to the state by eliminating the cost of the lengthy legislative authorization process that was often built into state construction contracts." (Citations omitted; internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 11. "By permitting a contractor to seek recourse against the state for claims arising under a public works contract, the legislature clearly intended to provide the contractor with significant protection against a breach of that contract by the state. The fact that contractors have been granted such protection under § 4-61 would suggest that they are more likely to bid on state projects, which, in turn,

would make it more likely that the cost to the state of such projects will be reduced." *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 560, 737 A.2d 398 (1999). In short, § 4-61 was designed to "increas[e] the quality of construction in the state while, at the same time, reducing its cost by permitting contractors to sue the state directly to resolve disputed claims arising under public works contracts quickly and efficiently." *Dept. of Transportation* v. *White Oak Corp.*, supra, 14.

When it was originally enacted, § 4-61 contained no notice provision or limitations period within which actions were required to be commenced. See Public Acts 1957, No. 229. Accordingly, actions brought pursuant to § 4-61 were governed by the general statute of limitations for contract actions, which affords a plaintiff six years in which to bring suit. See Conn. Joint Standing Committee Hearings, Roads and Bridges, Pt. 2, 1961 Sess., p. 955, testimony of Adam Knurek on behalf of the state highway department; see also General Statutes § 52-576 (a). In response to the state's concern that unexpected actions were being brought long after projects were completed, hampering the state's ability to investigate due to the geographic dispersal of witnesses and records, the legislature adopted No. 555 of the 1961 Public Acts, which amended § 4-61 to require that actions be brought sooner and that contractors provide prior notice of the nature of their claims.[14] See Conn. Joint Standing Committee Hearings, supra, pp. 954–55, testimony of Knurek; id., pp. 956–57, 972, testimony of Attorney General Albert L. Coles; id., pp. 965–66,

---

[14] Specifically, the amendment required notice to be given no later than two years from the date of acceptance of the contract, and actions to be brought no later than three years from the date of acceptance of the contract. Public Acts 1961, No. 555. In 1992, the notice and limitations provisions were altered such that the two and three year periods, respectively, were to run from the date of acceptance of the contract, or that of the contract's termination, whichever was earlier. Public Acts 1992, No. 92-228, § 8.

testimony of James Haran on behalf of the department of public works; id., pp. 969–70, testimony of Edwin Burdick on behalf of the Connecticut Road Builders Association. Although a proposed version of the original notice provision called for some level of detail as to the subject matter of the claim,[15] the legislature ultimately adopted language that was less stringent, requiring simply "notice of the general nature of such [disputed] claim . . . ." Public Acts 1961, No. 555. The legislature apparently was concerned that requiring too much detail could impede contractors' rights to bring actions,[16] thereby interfering with the policy objectives of § 4-61.

In 1991, in response to the state's concern that the lack of provisions governing arbitration proceedings brought pursuant to § 4-61 (b)[17] had created an uneven

[15] The proposed version would have required that notice include "a concise statement of the disputed claims, including the date, time, place and circumstances of the acts or events complained of," and provided further that no notice shall be held insufficient unless the state could show that it was substantially prejudiced thereby. (Internal quotation marks omitted.) Conn. Joint Standing Committee Hearings, supra, pp. 969–70, remarks of Burdick. Coles, in promoting that version, explained it as follows: "So you can write on the back of a paper and say that on April 28 I was dissatisfied with the terms of your contract and I lost so many thousands of dollars on the highway bridge in Putnam. That's enough. That's the only kind of a notice these fellows have to give. They don't have to elaborate in great detail. They can just give a notice, put these fellows on notice that the state is going to be sued for substantial money." Id., p. 960. In describing the operation of the provision, Coles explained: "[A]ll you do is give them a letter and say, we have a claim. . . . [Y]ou'll write to somebody because you want money, and you will write them and say, we have a claim and we want this money . . . ." Id., p. 963.

[16] Burdick, who advocated for the version of the notice provision that was adopted, testified that the version sought by Coles was "too limiting." Conn. Joint Standing Committee Hearings, supra, p. 969. According to Burdick, there was "fear that . . . the language . . . of the notice will be used to bar legitimate claims on technicalities rather than permitting their adjudication on a showing of fact." Id., p. 970. Burdick expressed doubt that requiring the state to show prejudice would be effective to eliminate that possibility. Id.

[17] A 1986 amendment to § 4-61 had added subsection (b), which permitted contractors to demand arbitration as an alternative to litigation, subject to

playing field, the legislature added subsections (c) through (g) to § 4-61. Public Acts 1991, No. 91-284, § 1 (P.A. 91-284). Relevant to the present matter, state officials testified at committee hearings that under the existing scheme, some contractors would provide vague notices of claims, invoke freedom of information statutes to demand records from the state, then file demands for immediate arbitration. Due to the short timetable and an inability to access these contractors' records, the state was unable to respond effectively.[18] In response, the legislature added subsection (c), which requires generally that contractors and the state allow each other equal access to any relevant documents once notice of a claim has been filed, and subsection (d), which provides generally that in the event of an arbitration hearing, the parties be afforded adequate time to prepare. P.A. 91-284. Additionally, the notice requirements as to both litigation and arbitration were changed to their present versions, requiring written "notice of each such claim under such contract *and the factual*

the same notice requirement. The preexisting provision authorizing lawsuits became subsection (a). Public Acts 1986, No. 86-253.

[18] At committee hearings on the proposed amendments, Richard Kehoe, special counsel to the attorney general for legislative matters, testified that, under the existing statute, contractors could use provisions of the Freedom of Information Act, General Statutes § 1-200 et seq., to seek information about a potential claim from the state, then "file a notice of claim that's very vague and doesn't give the state much to go on in terms of preparing our defense. They will then file a request for arbitration before the [American Arbitration Association] and within several weeks to several months the state then has to scramble around and prepare for defense of some claims that are very complex and involve several million dollars. . . . [W]e see this as a major impediment to the state preparing an adequate defense." Conn. Joint Standing Committee Hearings, Government Administration and Elections, Pt. 2, 1991 Sess., p. 554. Larry Russ, the supervisor of construction litigation for the departments of transportation and public works, testified similarly. Id., p. 556. Gay Richard, an employee of the department of transportation, testified that some contractors refused to allow the department access to their records relating to disputed claims; see id., p. 592; and that the "law requires only that [contractors] give written notice of the general nature of the claim and that is taken very literally." Id., p. 593.

*bases for each such claim . . . ."* (Emphasis added.) P.A. 91-284.

In each chamber of the General Assembly, when the 1991 amendment was introduced, its sponsor stated that the "notice requirement should be liberally construed so as not to defeat any claim in [close] cases." 34 H.R. Proc., Pt. 22, 1991 Sess., p. 8531, remarks of Representative Robert D. Godfrey; see also 34 S. Proc., Pt. 6, 1991 Sess., p. 2162, remarks of Senator Marie A. Herbst. Representative Godfrey explained that notice would be "sufficient if it communicates to the [s]tate the nature of the claim based on what is known at the time so that the [s]tate may attempt to resolve the problem short of arbitration." 34 H.R. Proc., supra, p. 8531. Senator Herbst explained similarly: "[T]he amendment requires a contractor to provide more information to the [s]tate in their notice of claim so that the [s]tate may attempt to resolve the problem short of arbitration." 34 S. Proc., supra, p. 2162.

Taking into consideration the evolution of the statute, we conclude that the plaintiff's April 15, 2004 letter to Fleming constitutes sufficient notice of a claim pursuant to § 4-61. The history of the notice provision indicates a persistent concern that it not be applied so restrictively as to prevent contractors from pursuing meritorious claims and, accordingly, to defeat the purpose of § 4-61. Although § 4-61 was reworded in 1991 to require somewhat greater detail as to claims, that rewording was designed to prevent ambushes, not to provide a vehicle to defeat valid claims, and it was accompanied by other changes to § 4-61 that gave the state greater power to seek documentation from contractors and more time in which to evaluate the documentation, lessening the need for a highly specific notice of claim. Furthermore, pursuant to the 1961 amendments, contractors are allowed limited time in which to give notice and to bring actions, ensuring

that claims remain fresh. Finally, the legislature clearly intended that, in close cases, the scale tip in favor of affording the contractor the right to pursue its claim. This in turn promotes the policy objectives underlying § 4-61 by encouraging competitive bidding, resulting in greater quality construction and lower costs to the state. *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 11, 14; *Dept. of Public Works* v. *ECAP Construction Co.*, supra, 250 Conn. 560.

Here, the plaintiff's April 15, 2004 letter identified the contract date and amount, the location and subject matter of the project, the planned and actual dates of completion, and the cause and amount of overruns. See footnotes 6 and 7 of this opinion. The letter also explicitly included a detailed timeline of previous efforts to resolve the matter informally; see footnote 7 of this opinion; which enabled Fleming readily to locate voluminous, comprehensive documentation already in the department's possession. Taking into consideration a commissioner's ability to demand from a contractor any additional information necessary to investigate a claim to either avoid or prepare for litigation or arbitration,[19] we conclude that the notice of claim provided by the plaintiff to Fleming was adequate. Accordingly, the trial court possessed subject matter jurisdiction over the plaintiff's claim and, therefore, improperly granted the state's motion to dismiss.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[19] Indeed, O'Hearn, when he responded to the plaintiff on Fleming's behalf, requested additional information from the plaintiff, and the plaintiff promptly provided that information.