# DEPARTMENT OF TRANSPORTATION
## v. WHITE OAK CORPORATION
### (AC 33458)

Gruendel, Beach and Peters, Js.

Argued December 10, 2012—officially released April 9, 2013

*Lawrence Russ*, assistant attorney general, with whom were *Howard K. Levine* and, on the brief, *George Jepsen*, attorney general, for the appellant (plaintiff).

*Linda L. Morkan,* with whom were *Todd R. Regan* and *Dennis C. Cavanaugh,* for the appellee (defendant).

*Opinion*

GRUENDEL, J. This appeal concerns the proper scope of an arbitration proceeding commenced under the narrow confines of General Statutes § 4-61. The plaintiff, the department of transportation (department), appeals from the judgment of the trial court denying its application to vacate, correct or modify an arbitration award and granting the application to confirm the award filed by the defendant, White Oak Corporation (White Oak). The department contends that the court improperly confirmed an arbitration award predicated on claims over which the arbitration panel lacked jurisdiction due to the state's sovereign immunity. We agree and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The parties entered into two public works contracts in the mid-1990s relevant to this appeal. The first pertained to the reconstruction of the Tomlinson Bridge in New Haven; the second concerned the reconstruction of the Yellow Mill Pond Bridge and a portion of Interstate 95 in Bridgeport. Both projects were plagued by numerous delays. Ultimately, the department, White Oak and White Oak's surety reached an agreement on March 9, 2000, to reassign the two contracts to other contractors for completion.

White Oak subsequently filed against the department two separate notices of claims and corresponding demands for arbitration with the American Arbitration Association (association) pursuant to § 4-61 (b).[1] In the

---

[1] General Statutes § 4-61 (b) provides in relevant part: "As an alternative to the procedure provided in subsection (a) of this section, any such person, firm or corporation having a claim under said subsection (a) may submit a demand for arbitration of such claim or claims for determination under (1) the rules of any dispute resolution entity, approved by such person, firm

demand related to the Tomlinson Bridge contract (Tomlinson arbitration), White Oak sought $93,793,891.11 in damages for the department's alleged wrongful termination of the contract. In the demand regarding the Bridgeport contract (Bridgeport arbitration), White Oak sought $45,205,336.30 in damages for the department's alleged wrongful termination of the contract.

In response, the department commenced an action in the Superior Court seeking to enjoin White Oak and the association from further prosecuting the two arbitrations. The department alleged, inter alia, that the association lacked subject matter jurisdiction over the claims presented therein due to White Oak's failure to comply with the notice requirements of § 4-61 (b). Following the submission of briefs by the parties, the matter was argued before the court, *Sheldon, J.*, on divers days. The court then took the matter under advisement pursuant to the parties' waiver of the 120 day deadline for the filing of its memorandum of decision.

Before the court issued its memorandum of decision, the Tomlinson arbitration panel issued a final award rejecting White Oak's sole claim for wrongful termination, which the trial court confirmed. White Oak thereafter filed a motion to dismiss the injunction action. The

or corporation and the agency head and (2) the provisions of subsections (b) to (e), inclusive, of this section, except that if the parties cannot agree upon a dispute resolution entity, the rules of the American Arbitration Association and the provisions of said subsections shall apply. The provisions of this subsection shall not apply to claims under a contract unless notice of each such claim and the factual bases of each claim has been given in writing to the agency head of the department administering the contract within the time period which commences with the execution of the contract or the authorized commencement of work on the contract project, whichever is earlier, and which ends two years after the acceptance of the work by the agency head evidenced by a certificate of acceptance issued to the contractor or two years after the termination of the contract, whichever is earlier. A demand for arbitration of any such claim shall include the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of the claim. . . ."

court granted that motion with respect to the Tomlinson arbitration, concluding that the matter was moot. The court denied the motion with respect to the Bridgeport arbitration.

The court issued its memorandum of decision on whether to enjoin the Bridgeport arbitration on April 3, 2006. Describing the Tomlinson and Bridgeport arbitrations as "separate but related," the court detailed the factual and procedural history underlying the injunctive action before it. The court then analyzed the department's claim that White Oak had failed to comply with the mandatory notice requirements of § 4-61 (b).[2] Emphasizing the plain language of § 4-61 (b), the court stated: "Under that statute, a claimant's written notice of claim must both name each claim of which he wishes to give notice and disclose the factual bases of each such noticed claim. His later demand for arbitration, which can only be filed as to one or more properly noticed claims, must include, for each such claim, both the amount of damages sought on it . . . and the alleged facts and contractual or statutory provisions which form the basis for its assertion." The court examined the notice of claim that White Oak provided to the department in its six page letter dated March 30, 2001, to department commissioner James F. Sullivan. That notice indicated that White Oak "seeks legal and/or equitable relief for the following acts and/or omissions of the department: (1) delays in the project; (2) nonpayment of contract amounts owed; and (3) wrongful termination." After reviewing the specifics of that

---

[2] The court also considered the department's alternative claims that White Oak lacked standing due to the alleged assignment of its claims to its surety and that White Oak's claims do not arise from the contract between the parties, but rather constitute either tort claims or impermissible pass-through claims. Those claims were rejected by the court and have no bearing on the present appeal.

notice, the court concluded that "it was more than suffi-cient to inform the [department] as to the general nature of White Oak's wrongful termination claim."

The court then turned its attention to the depart-ment's challenge to the demand for arbitration filed by White Oak. The department argued principally that the demand was defective because it failed to state the amount of damages of the wrongful termination claim. As the court stated, "[t]his assertedly resulted from the listing on a single demand for arbitration of three separate claims but only one amount of damages, with-out affording any basis for apportioning such damages among the three claims." After scrutinizing the demand for arbitration, the court found that "the demand is virtually identical in substance to the . . . notice. . . . What is plainly different about the demand [compared to] the notice is that the demand lists all of its factual allegations as parts of a single claim of wrongful termi-nation, whereas the notice, though incorporating the allegations from its 'Project Delays' and 'Non-Payment of Contract Claims' sections into its 'Wrongful Termina-tion' section, listed them separately. Consistent with this change, the demand concludes by listing . . . a single amount of damages but does not suggest that that amount applies to multiple claims." The court con-tinued: *"What was implicit in White Oak's Bridgeport notice has now been made explicit in its Bridgeport demand, to wit: that its wrongful termination claim is based upon and subsumes within it the entire, alleg-edly unreasonable course of conduct that led up to it,* including all of the costly, damaging, unreasonable acts by which White Oak claims to have been forced to endure and not be compensated for substantial project delay, to experience non-payment of monies due it under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for its completion by O & G [Industries]. *Since that claim,*

*though supported by multiple acts of alleged miscon-*
*duct, is a single claim, it is appropriate to list for it*
*a single amount of claimed damages in the demand*
*for arbitration required by [§] 4-61 (b)."*[3] (Emphasis
added.) For that reason, the court likewise rejected
the department's ancillary contention that the demand
described claims that were not previously mentioned in
the notice, concluding that "the inclusion of additional
specifications of unpaid-for project delays in the
[demand] did not constitute the presentation of a new
claim, but rather the statement of a modified basis for
pursuing a previously noticed wrongful termination
claim." Accordingly, the court rendered judgment in
favor of White Oak "on all remaining counts and claims
of the department's complaint in this action, wherein
the department seeks to enjoin them [from] further
prosecuting or conducting further proceedings in the
Bridgeport arbitration on . . . White Oak's claim that
the Bridgeport contract was wrongfully terminated."

As the Bridgeport arbitration proceeded, White Oak
served a second notice of claim and demand for arbitra-
tion on the department related to the Tomlinson Bridge
matter (second arbitration), seeking $110,314,807 in
damages plus interest for delays associated therewith.
In response, the department commenced an action
seeking a permanent injunction barring the second arbi-
tration, which the trial court denied. On appeal, our
Supreme Court reversed that determination. The court
noted that "waiver of the state's sovereign immunity
under § 4-61 (a) is a condition precedent to the arbitral
submission in § 4-61 (b). . . . Accordingly, whether an
arbitration is barred by the doctrine of sovereign immu-
nity pursuant to § 4-61 (a) is a matter for the courts,

---

[3] As shall be explored further in this opinion, White Oak's steadfast posi-
tion before the trial court was, as it stated in its December 16, 2002 trial
brief in opposition to the injunctive action, that "White Oak has demanded
only wrongful termination damages in the Bridgeport arbitration" and that
said demand sought arbitration "on only the wrongful termination claim."

not for the arbitrators, to decide." (Citation omitted.) *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7 n.8, 946 A.2d 1219 (2008) (*White Oak I*). The court further explained that "§ 4-61 was intended to carve out a narrow and limited exception to sovereign immunity. . . . The scope of this exception must be construed strictly, and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In light of the ambiguous language of the statute, and the dearth of any extratextual evidence indicating an affirmative legislative intent to enact a blanket waiver of sovereign immunity permitting a contractor to file multiple actions against the state, we are constrained to conclude that § 4-61 waives the state's sovereign immunity only with respect to a single action or arbitration wherein all existing disputed claims arising under a public works contract must be pursued and resolved." (Citations omitted; internal quotation marks omitted.) Id., 13–14. Our Supreme Court thus concluded that "[b]ecause White Oak's claim for delay damages existed at the time its notice of claim had been filed in the first arbitration . . . and because White Oak failed to pursue its claim in that proceeding, we conclude that it is barred by the doctrine of sovereign immunity." (Citation omitted.) Id., 6–7. The court thus reversed the judgment of the trial court and remanded the matter to it with direction to render judgment in favor of the department on its claim for a permanent injunction. Id., 20.

The Bridgeport arbitration, which spanned more than 150 hearing days over the course of several years, culminated when the arbitration panel issued its decision on October 31, 2009. In that decision, the panel found that the department did not terminate the contract with White Oak.[4] The panel, however, did not stop there.

[4] The panel specifically found, inter alia, that "[t]here was no document issued by the department, or statement made by the department, that clearly terminated White Oak. The claim of termination is contrary with White

Despite determining that White Oak failed to prove its claim of wrongful termination, the panel nevertheless considered White Oak's entitlement to liquidated damages distinct from its claim of wrongful termination. Although the department argued that the panel lacked subject matter jurisdiction over that claim due to White Oak's failure to provide proper notice under § 4-61, the panel concluded otherwise. It stated in relevant part: "[T]his panel finds that the claim by White Oak was not only one of wrongful termination, but also for damages. The facts of this arbitration are different. White Oak's notice dated March 30, 2001, to the commissioner of [the department] and its demand for arbitration dated December 4, 2001, to the [association] contained claims for both wrongful termination and damages. At page 1 of the demand for arbitration, White Oak stated, 'White Oak seeks compensation for delays in the project, nonpayment of contract amounts owed, non-payment of extra work and other impacts and wrongful termination of contract'. . . . Therefore, it is clear from the record that White Oak's arbitration was clearly within § 4-61." The panel proceeded to award White Oak more than $4.7 million in liquidated damages and prejudgment interest in excess of $4.9 million.[5]

On November 30, 2009, the department filed an application to vacate, correct or modify the arbitration award, arguing that "[h]aving found against White Oak on the only legally cognizable claim it advanced over which the panel had subject matter jurisdiction, the panel exceeded its jurisdiction conferred pursuant to . . . § 4-61 and greatly exceeded their powers . . .

---

Oak's assignment of its contract rights to O & G [Industries]. Not a single document introduced into evidence contained a reference to a termination having occurred."

[5] The arbitration award included $45,050 in association fees and expenses, as well as $904,459 in compensation and expenses for the panel. The panel consisted of Chairman Stewart F. Kleinman, Esq., Kenneth J. Borst and Steve A. Zoto.

and have awarded upon a matter not submitted to them . . . thus rendering the award imperfect in form . . . ."[6] (Citations omitted.) Three and one-half months later, White Oak filed an application to confirm the arbitration award. That pleading did not mention any specific claims, but rather stated simply that "[t]he final award conforms to . . . § 4-61 and to the submission to the arbitrators."

In its May 2, 2011 memorandum of decision, the court, *Hon. Richard M. Rittenband*, judge trial referee, first addressed the issue of whether the arbitration panel had jurisdiction to hear the arbitration and render a decision. In answering that query, the court expressly found Judge Sheldon's April 3, 2006 ruling in the injunction action to be "the law of the case" on issues of "jurisdiction and arbitrability . . . ." As the court stated: "The court, *Sheldon, J.*, found that White Oak properly pleaded a claim of wrongful termination, that it had satisfied the requirements of . . . § 4-61, that the notice of claim sufficiently informed the department of the general nature of White Oak's wrongful termination claim. The court also stated that although White Oak's notice of claim was divided into four different sections and its demand for arbitration was not similarly format-ted, all the allegations in the demand flowed into a single claim of wrongful termination. The court held that White Oak need not state a particular contract provision in order to satisfy . . . § 4-61 because its claim for wrongful termination was substantive, not procedural, in nature. Finally, the court stated that because White Oak brought a single claim of wrongful termination, White Oak properly listed a single amount of damages in its demand for arbitration."[7]

---

[6] Appended to the department's application to vacate was a copy of Judge Sheldon's April 3, 2006 memorandum of decision in the injunction action, in which the court concluded that the only claim set forth in White Oak's demand for arbitration was one for wrongful termination.

[7] In its memorandum of decision, the court quoted with emphasis the following portion of Judge Sheldon's April 3, 2006 ruling: "[White Oak's

Having concluded that Judge Sheldon's April 3, 2006 ruling that "White Oak brought a single claim of wrongful termination" was the law of the case, the court next addressed whether the arbitration panel's award conformed to the submission. The court analyzed that issue as follows: "The short answer is yes. The arbitration panel did decide the issues put before it by the parties." Although the department argued that the panel had exceeded its powers and imperfectly executed them, the court disagreed, noting that arbitrators are empowered to decide factual and legal questions in an unrestricted arbitration submission. Reasoning that Judge Sheldon had "specifically held that the 'wrongful termination claim is based upon and subsumes within it the entire, allegedly unreasonable course of conduct that led up to it, including all of the costly, damaging, unreasonable acts by which White Oak claims to have been forced to endure'," the court concluded "that it is clear that the panel's award of wrongfully withheld liquidated damages . . . does not amount to a manifest disregard of the law, particularly based upon the panel's authority to make findings of fact and law." Accordingly, the court granted White Oak's application to confirm the arbitration award and denied the department's application to vacate, correct or modify the award. From that judgment, the department appeals.

---

wrongful termination claim] subsumes within it the entire, allegedly unreasonable course of conduct that lead up to it, including all of the costly, damaging, unreasonable acts by which White Oak claims to have been forced to endure and not be compensated for substantial project delay, to experience non-payment of monies due it under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for the completion [of the contract] by O & G [Industries]. Since that claim, though supported by multiple acts of alleged misconduct, is a single claim, it is appropriate to list for it a single amount of claimed damages in the demand for arbitration required by [§] 4-61 (b). For all of the foregoing reasons, the court rejects in its entirety the department's second challenge to the subject-matter jurisdiction of the [association] over White Oak's claim of wrongful termination of its Bridgeport contract."

At the outset, we note what is not at issue in this appeal. This case is not about whether the trial court in the injunction action properly interpreted § 4-61 or whether that court properly concluded that the sole claim set forth in White Oak's demand for arbitration was one for wrongful termination. Neither party appealed from that judgment, which the trial court in the present case adopted as its own as to questions of jurisdiction and arbitrability.[8] Accordingly, we confine our review to the question of whether, in light of that ruling, the arbitration panel possessed jurisdiction to entertain additional claims. To properly answer that question, we consider (1) the appropriate standard of review over a claim that an arbitration panel exceeded its powers in deciding the issue of arbitrability, (2) the law of the case doctrine, (3) White Oak's claim that the department waived its right to judicial review of questions of arbitrability by (a) consent and (b) failing to appeal from the injunction decision, and (4) the determination of the arbitration panel.

I

STANDARD OF REVIEW

In granting White Oak's application to confirm the arbitration award and denying the department's application to vacate, correct or modify, the trial court found that the submission to the arbitration panel was unrestricted. As a result, it applied a very deferential standard of review, noting that in such instances "the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the

---

[8] Although this court cannot revisit Judge Sheldon's determination that White Oak's demand for arbitration contained only a single claim for wrongful termination, as neither party appealed from that judgment, we note, consistent with that determination, that the demand plainly does not set forth a specific amount of damages or a specific factual basis for either a claim for liquidated damages or prejudgment interest, as required by § 4-61 (b).

grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact." (Internal quotation marks omitted.) In so doing, the department argues that the court applied an improper legal standard.[9] On our plenary review of that issue of law; *Crews* v. *Crews*, 295 Conn. 153, 161, 989 A.2d 1060 (2010); we agree with the department.

The distinction between a restricted and unrestricted submission pertains primarily to contractual submissions to arbitration. As a general matter, "arbitration is a creature of contract." *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 116, 728 A.2d 1063 (1999); see also 6 C.J.S. 66, Arbitration § 1 (2004) ("[t]he settlement of controversies by arbitration is a contractual proceeding of common law origin by which the parties consent to submit the matter for determination to a neutral third party rather than to the tribunals provided by the ordinary processes of the law"). Our decisional law instructs that "[*w*]*hen the parties agree to arbitration* and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement." (Emphasis added; internal quotation marks omitted.) *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, supra, 114; see also *Trumbull*

---

[9] White Oak's appellate brief is silent as to the propriety of the standard of review applied by the trial court in confirming the arbitration award and does not dispute the department's assertion that the distinction between restricted and unrestricted arbitral submissions has no bearing on arbitrations commenced pursuant to § 4-61 (b).

v. *Trumbull Police Local 1745*, 1 Conn. App. 207, 212, 470 A.2d 1219 (1984) (judicial review of arbitration award limited "by the terms of the contractual agreement between the parties"); cf. *Milford* v. *Coppola Construction Co.*, 93 Conn. App. 704, 709, 891 A.2d 31 (2006) ("[i]f the parties choose to set limits on the arbitrator's powers, then the parties will be bound by those limits"). This is not a case in which the contractual agreement between the parties provides for arbitration in any manner, nor is this a case in which the department consented to the submission presented by White Oak. Contra *Blakeslee Arpaia Chapman, Inc.* v. *Dept. of Transportation*, 273 Conn. 746, 749, 873 A.2d 155 (2005) ("[i]t is undisputed that the plaintiff's submission to arbitration was unrestricted"). Rather, the department from the outset objected to the arbitrability of White Oak's submission and commenced an injunction action to enjoin its prosecution. As such, the distinction between restricted and unrestricted submissions is inapposite.

Unlike the vast majority of arbitrations instituted pursuant to contractual agreement, White Oak sought to arbitrate its dispute with the department via the "narrow and limited exception to sovereign immunity" set forth in § 4-61. *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 13. To paraphrase the observation of our Supreme Court with respect to the Tomlinson arbitration, the scope of the arbitral submission here was not defined by a contractual agreement to arbitrate, but by a statutory waiver of sovereign immunity. Id., 7 n.8. The precise contours of the arbitral submission under § 4-61 (b) in the present case were delineated in the injunction action, which the court here adopted as the law of the case. The department claims that the arbitration panel exceeded the scope of that arbitral submission by rendering its award on a matter not submitted to them, thereby exceeding their powers.

For that reason, the department moved to vacate, correct or modify the arbitration award pursuant to

General Statutes §§ 52-418 (a) (4) and 52-419 (a) (2).[10] The question of whether an arbitration panel exceeded its powers "presents a question of law over which we exercise plenary review." *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 104, 919 A.2d 1002 (2007); see also *Marulli* v. *Wood Frame Construction Co., LLC*, 124 Conn. App. 505, 510, 5 A.3d 957 (2010) (trial court's decision to vacate arbitration award under § 52-418 subject to de novo review because questions of law involved), cert. denied, 300 Conn. 912, 13 A.3d 1102 (2011); *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 117 Conn. App. 54, 58, 978 A.2d 131 (2009) ("if a party specifically contends that the arbitrator's award does not conform to the submission in violation of § 52-418 [a] [4], we engage in de novo review").[11] With particular respect to the issue of arbitrability, "courts generally review challenges to an arbitrator's determination of arbitrability de novo." *New Britain* v. *AFSCME, Council 4, Local 1186*, 304 Conn. 639, 647, 43 A.3d 143 (2012).

## II

## LAW OF THE CASE

The department's principal contention in support of its application to vacate, correct or modify the arbitra-

---

[10] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

General Statutes § 52-419 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order modifying or correcting the award if it finds any of the following defects . . . (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted . . . ."

[11] There exists no "meaningful distinction between plenary and de novo review," as those terms are used interchangeably. *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 746 n.13, 826 A.2d 170 (2003).

tion award was that the arbitration panel strayed beyond the confines delineated by the trial court in denying the department's request for injunctive relief and permitting the matter to proceed to arbitration "on . . . White Oak's claim that the Bridgeport contract was wrongfully terminated." Accordingly, we begin our analysis with a more detailed examination of that ruling and the context in which it arose, as the trial court here adopted that ruling as its own on issues regarding jurisdiction and arbitrability.

A

Following the commencement of the Tomlinson and Bridgeport arbitration proceedings, the department instituted an action in the Superior Court to enjoin those proceedings. Its November 15, 2002 verified amended complaint quoted § 4-61 for the proposition that a claimant seeking to avail itself of the narrow waiver of sovereign immunity contained therein "must give written notice to the pertinent agency head of 'each claim' being brought, stating 'the factual bases for each such claim' . . . and . . . if such notice has been given, the claimant may submit a demand for arbitration of 'such claim or claims,' which demand must include 'the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of [each] claim.' " With respect to the Bridgeport arbitration, the complaint alleged, inter alia, that White Oak's demand for arbitration "includes many claims . . . for which no factual bases are stated . . . ." The complaint further alleged that although the demand appears to set forth multiple claims, it "states only one claimed amount . . . '$45,205,336.30,' in its 'damages' section . . . ." Accordingly, the department reasoned that because "the Bridgeport demand does not state the dollar amounts of the claims asserted therein, and there-

fore does not satisfy the pleading requirement of § 4-61 (b) . . . no subject matter jurisdiction exists over the Bridgeport arbitration."

The transcripts of the injunction hearing indicate that a central inquiry concerned precisely what claims were being asserted by White Oak in its demand for arbitration.[12] Early on, the court asked White Oak's counsel, attorney Lawrence G. Rosenthal, "[i]s it, in fact, your assertion . . . that this is only one claim?" Rosenthal answered, "Yes, Your Honor . . . . This is a claim, a

---

[12] The demand for arbitration states in relevant part: "The factual bases are as follows: "(1) On April 11, 1997, the department awarded White Oak a contract for the project.

"(2) The original contract completion date was September 17, 1999.

"(3) Pursuant to Section 1.03.08 of the Contract Standard Specifications, as modified by the Special Provisions and Addendum No. 2, the department was to issue to White Oak a Notice to Proceed (NTP) in two parts. NTP #1, which authorized White Oak to begin work on submittals and shop drawings only, was to be issued within 10 days after award of the contract. NTP #2, a full and unrestricted NTP was to be issued no later than June 2, 1997.

"(4) NTP #1 was issued on April 18, 1997 with an effective date of April 21, 1997.

"(5) The department issued a partial NTP #2, authorizing land work only, on May 19, 1997. This was not authorized by White Oak.

"(6) Section 1.08.04 of the Contract Special Provisions required that White Oak construct a waste stockpile area (WSA) in accordance with the department's plans and specifications before it could begin the land excavation work. This work was scheduled to commence 4 days after the issuance of NTP #2, or on May 23, 1997. The department's plans and specifications were defective because the location of the WSA conflicted with construction of the bridge piers. The department issued a redesign of the WSA on July 9, 1997, which then allowed White Oak to start the WSA on July 19, 1997. As a result of the aforesaid the start of this work was delayed from May 23, 1997 until July 19, 1997, or by 57 days.

"(7) The project work included the construction of a sewer line on South Frontage Road. This work should have started on May 19, 1997, the date of NTP #2. However, before this work could proceed, the department had to relocate certain utilities that conflicted with the sewer construction. These utilities were not completely relocated until October 7, 1997, thereby delaying the start of this work from May 19, 1997 until October 7, 1997, a delay of 141 days.

"(8) The project work included the department's providing to White Oak upon the issuance of NTP #2, a Laydown/Storage/Staging Area at a site

cause of action for wrongful termination. There are

designated in the contract documents. This area was not released by the department until October 17, 1997 thereby denying access to this site and interfered with the commencement of White Oak's work from May 19, 1997 until October 17, 1997, or by 151 days.

"(9) The project work included the construction of a temporary ferry access road. This work was scheduled to start upon the issuance of NTP #2 but was delayed because the department did not secure the necessary right-of-way until August 4, 1997, thereby delaying access to this work from May 19, 1997 until August 4, 1997, or 77 days.

"(10) On October 4, 1997, White Oak received from the department a full NTP #2, but the NTP did not authorize work in the water until October 15, 1997, thereby delaying work in the water from May 19, 1997 until October 15, 1997 or by 149 calendar days.

"(11) Contract drawings 504 and 505 included an erection procedure and plan for erecting the project's continuous girder spans over the Metro North Railroad ('MNRR'). This procedure and plan was defective and the girders could not be erected as shown on the contract drawings. As a result, White Oak had to redesign the department recommended erection procedure represented on the contract plans and obtain the department's and MNRR's approval before it could use the new erection procedure. The department gave its approval to the new erection procedure on December 30, 1999. White Oak had the girders ready for erection on May 4, 1999, but could not proceed with this work until December 30, 1999. As a result, this work was delayed 240 days.

"(12) The project schedule showed the duration for the department's continuous girder span erection procedure. The new erection procedure approved by the department required an additional 138 days to erect these continuous girders and as a result the project was delayed 138 days.

"(13) The department revised the original contract design of the slab supports that were required for demolition of the existing superstructure. White Oak submitted shop drawings for the original design on August 1, 1997. The department returned the shop drawings marked 'Unreviewed' and advised White Oak that the department was redesigning the slab supports. The department sent the new design to White Oak on September 17, 1997. White Oak submitted new shop drawings on October 9, 1997. The department approved the new shop drawings on October 31, 1997. As a result, this work was delayed from August 22, 1997 to October 31, 1997 or a period of 70 days.

"(14) The department's original design for the temporary slab supports was defective. White Oak delivered the temporary slab supports to the project on September 16, 1997. It was then discovered the department's design was defective and that the temporary slab supports had to be redesigned. The department redesigned the temporary slab supports and White Oak completed the retrofit on September 26, 1997. As a result this work was delayed 10 days.

"(15) Unforeseen subgrade conditions at Pier 9 necessitated the pouring of tremie concrete. This work added 3 days to the time required for the work at Pier 9.

"(16) White Oak encountered unforeseen large boulder obstructions while installing caisson shells that caused a 16-day delay to this work, as agreed by the department and White Oak.

"(17) The department ordered White Oak to clean sheet bellies following cofferdam excavation. This work was not required by the contract documents and it extended the duration of this work by 21 days.

"(18) The department's inspectors mishandled concrete test cylinders taken from the pier cap concrete pours. As a result, the follow on work, such as the post tensioning of the pier caps, was delayed by 21 days.

"(19) The department was required to arrange for a railroad flagman while White Oak was performing its demolition work. The department did not supply the flagman until 7 days after he/she was required and as a result this work was delayed by 7 days.

"(20) While excavating at Pier 17/S-1, White Oak encountered unforeseen contaminated ground water that required the use of tremie concrete at this location. As a result, this work was delayed 32.5 days.

"(21) The department ordered White Oak to demobilize its forces in anticipation of Hurricane Floyd. Two days were lost for demobilization, two days were lost for remobilization and one day was lost for the event itself.

"(22) The department failed and/or refused to pay White Oak fully for items of contract work performed by White Oak.

"(23) The department failed and/or refused to pay White Oak for items of contract work where the final quantities were greater than the quantities used by the department to determine payment amounts.

"(24) The department failed and/or refused to adjust unit prices where there were quantity overruns/underruns in excess of 25% of the bid quantities.

"(25) The department failed and/or refused to pay White Oak for work performed for the department in response to the department's Construction Orders.

"(26) The department failed and/or refused to pay White Oak for lump sum work performed at the department's direction.

"(27) The department failed and/or refused to pay White Oak for cost-plus work performed at the department's direction.

"(28) The department failed and/or refused to pay White Oak for extra work required by differing site conditions.

"(29) The department failed and/or refused to pay and further failed to grant time extensions to White Oak for extra work performed by White Oak.

"(30) White Oak's work was disrupted by the construction of Bluefish Stadium.

"(31) The Phoenix Soil off site contaminated soil storage area was closed on April 29, 1998. The department did not approve an alternate site until July 9, 1998 resulting in delays to White Oak's excavation activities and caused extra expense for the rehandling of material.

"(32) The department failed and/or refused to grant time extensions to White Oak for the delays specified above.

"(33) The department improperly and without justification assessed liquidated damages against White Oak.

"(34) On or about December 16, 1999, the department improperly and without justification demanded that White Oak's performance and payment

many reasons why there was wrongful termination. But the cause of action is solely wrongful termination." In response, the department's counsel, assistant attorney general Lawrence Russ, expressed incredulity at that attestation, remarking that "there is no way on God's green earth that anybody reading this [demand] says that they are single termination claims" and arguing that White Oak's demand "is drafted to smuggle [various claims] in by making it confusing. And anybody who can read that [demand] and say, there's really only one claim here, the claim for wrongful termination, deserves either all the kudos or a mental examination. Because you can see in reading it yourself, you can't tell what the claims are, and certainly the very fact that [White Oak] is now saying that it contains only one wrongful termination claim. That's just a way to smuggle in all the bad claims that they can later claim were contained within it." The court responded to that allegation as follows: "[I]t doesn't strike me that what [White Oak] is doing is creating a right to collect damages for each of the things that may have been wrong that predated

bond surety, AIG, secure a new contractor to complete the project. This act of the department, together with the above specified department actions, constitutes a wrongful termination of White Oak's contract. In response to the department's aforesaid demand, AIG secured a new contractor to complete the project while reserving any and all defenses and affirmative claims of White Oak.

"(35) As a result of the foregoing delays, the department insisted that White Oak add more manpower to accelerate the performance of the work. However, such manpower was not available due to a state wide labor shortage of construction workers. White Oak in an effort to accommodate the department's demands, increased the hours that its existing work crews worked from 40 hours per week to 60 hours per week. As a result, there was a corresponding loss of efficiency.

"(36) As a result of the foregoing, White Oak has been damaged by the department in the approximate amount of $45,205,336.30.

"(37) Through the date of this demand for arbitration, White Oak's claim against the department is not less than $45,205,336.30. The amount set forth herein is subject to adjustment based on one or more of the following: (1) adjustments related to the finalization of White Oak's financial statements for the year 2000; (2) further review of the records of White Oak and/or the department; and discovery of new and/or different facts."

[the termination], but merely to show a pattern of wrongdoing or misunderstandings or incorrect understandings as to what the alleged defalcations were on behalf of White Oak that lead to the turn in the road where they filed or made this demand of White Oak that is now claimed to be improper. If that's the situation, then your beef with them has to do with an effort to freight load into this termination claim a whole bunch of other things, which they may try to claim as consequential damages as a result of the termination, but which may, in fact, be other types of claims as to which they have not given notice. . . . [I]f that's the nature of the problem, which I do understand, then isn't your remedy subject to your right of moving to vacate an award . . . . Why wouldn't that claim be the sort of thing that is subject to vindication on a motion to vacate an award? Because it would be something where here's a panel with jurisdiction over a claim, but a claim in which people are trying shamelessly to freight load all measure of other subsidiary claims for which they have absolutely no right of relief."

The court repeatedly pressed White Oak's counsel as to the precise nature of the claims being asserted in the demand for arbitration. At one point, the court stated: "If what you are saying is, we can plead termination and then basically go on in and dig out from every corner, from every file cabinet, from every file room everything about the entire history of White Oak, and everything about the entire history of this particular contract, anything that might have gone wrong, and roll that all into one big rosebud to present to the arbitrators . . . where do you find the justification to do that in the statute?" Rosenthal later clarified that "[t]he only question of subject matter jurisdiction is, did we plead and give sufficient notice that we have a wrongful termination claim. Subject matter jurisdiction doesn't go to

damages, it goes to, is there a claim that was properly pled. And the claim has been properly pled." Shortly thereafter, the following colloquy ensued:

"The Court: . . . [L]et me ask you this: Are you making a claim that your demand . . . for arbitration in this case raises anything other than a termination claim?

"Mr. Rosenthal: No. Only damages that flow from the termination. So, it's all based on the termination.

"The Court: And so the review you would have me conduct with respect to the adequacy of the demands that are raised in that claim goes only to that claim and to none other?

"Mr. Rosenthal: That is correct. Because there are adequate factual bases given pursuant to § 4-61, which lays out its claim for wrongful termination."

In a later colloquy that merits attention, the court noted that White Oak's admission that its demand contained a single claim for wrongful termination placed White Oak in a precarious position in the event that the arbitration panel found no termination, an observation with which White Oak's counsel agreed:

"The Court: Let's just imagine that I say, okay, you know, there's enough here. You've alleged a termination. And you walk through the door and a whole bunch of subsidiary issues that you might have claimed under the termination on some basis, not disclosed in any way in your demand, are raised by you, but you can't prove a termination.

"Mr. Rosenthal: Then I suppose we'll be in a lot of trouble at that point in terms of our claim.

"The Court. Yeah.

"Mr. Rosenthal: Yeah.

"The Court: And I'm thinking—I'm listening to the arguments that have been made by your opponent here and, frankly, it makes me wonder whether he wishes to persist with this claim, *because if he is so certain that this was not a termination . . . then you're dead in the water—*

"Mr. Rosenthal: *Your Honor, I don't disagree with your perception.*

"The Court:—completely. It's just an observation.

\* \* \*

"The Court: Yet, I'm finding myself in a funny spot because I'm not sure what you would have me do or what [your opponent] would have me do quite to sculpt the scope of any relief order if I happen to agree with you. That's what I'm not sure about. . . .

"Mr. Rosenthal: . . . *I think you're quite right, we have brought a wrongful termination claim, I think we have to live and die by it at this point.* . . . But for the purposes of subject matter jurisdiction that we've been arguing about here, we have a wrongful termination claim, we have pled a wrongful termination claim, and the only question I see before this court is, when we look at the pleadings, do they satisfy § 4-61 or not . . . ." (Emphasis added.)

As the second day of the hearing neared conclusion, the court once again inquired as to whether White Oak's demand for arbitration contained a single claim for wrongful termination. It stated:

"The Court: . . . [M]y question to you . . . is on these [other allegations in the demand] that you insist are not . . . those aren't your claims at all?

"Mr. Rosenthal: No.

"The Court: Your claim is termination, and what these are, [they] are specifications of alleged damages.

"Mr. Rosenthal: Exactly."[13]

In its December 16, 2002 brief in opposition to the department's injunctive action, White Oak likewise averred that "[i]n the Bridgeport demand . . . arbitration was sought on only the wrongful termination claim." (Citation omitted.) That brief articulated White Oak's position that, although its notice of claim originally contained claims for wrongful termination, delay and contract non-payment, White Oak's subsequent demand for arbitration sought arbitration "on only the wrongful termination claim." Consistent with its steadfast attestation before the court that the demand contained a single claim for wrongful termination, White Oak's brief explained that the numerous allegations set forth in the demand; see footnote 12 of this opinion; merely were "factual background" for its claim of wrongful termination. As White Oak stated: *"After 33 paragraphs of allegations providing the factual background to the wrongful termination*, paragraph 34 of the Bridgeport demand states: '[o]n or about December 16, 1999, the department improperly and without justification demanded that White Oak's performance and payment bond surety, AIG, secure a new contractor to complete the project. This act of the department, together with the above specified department actions, constitutes a wrongful termination of White Oak's contract.' *Paragraph 36 states the damages sought on the wrongful termination claim* . . . . Therefore, the Bridgeport demand satisfies the requirements of § 4-61 (b) by including the 'amount of damages' and the alleged facts 'which form the basis' of the wrongful termination

---

[13] Although addressed at length in the department's principal appellate brief and separately bound appendix, White Oak's responsive appellate brief does not acknowledge any of the aforementioned attestations it made before Judge Sheldon in the injunction action.

claim. Actually, the Bridgeport demand far exceeds the statutory requirements *by stating more than 30 paragraphs of narrative background which give the department the full and complete picture of the stated wrongful termination claim.*"[14] (Emphasis added.)

In what now appears a moment of clairvoyance, the court plainly expressed its concern over the unartfully pleaded demand for arbitration: "I am concerned that what [White Oak] . . . is attempting to get as damages for termination [is] something that goes well beyond that. . . . So, my question to you is, what protection is there for the [department] in going into this arbitration and spending the next eight years arbitrating with you about every widget that was ever brought or not brought, on time or late to this job? . . . [*T*]*he concern I have is to cabin you to that which you have a right to do*, without allowing you to basically bleat on forever before the arbitrators." (Emphasis added.) As the hearing neared conclusion, the court intimated that White Oak might be bound to its unequivocal attestation that only one claim was contained in its demand for arbitration: "I'm not telling you I've decided that you have adequately pleaded it, but I'm saying [that] it seems to me if the court were to make an order finding, yes, there is jurisdiction, but only on this topic . . . provided that there are damages that are lawfully available under the contract for an alleged termination of a contract, then as a practical matter, the court's jurisdictional determination, which is its to determine, *would be solely that there is a proper jurisdiction in the arbitration panel on the issue of termination.*" (Emphasis added.)

In its memorandum of decision, the court did exactly that. The court expressly rejected the department's

---

[14] At oral argument before this court, White Oak's appellate counsel maintained that wrongful termination, although the "overarching claim," was not the only claim set forth in the demand for arbitration. That argument is difficult to reconcile with the detailed explanation White Oak articulated in its December 16, 2002 brief before Judge Sheldon.

argument that the demand for arbitration contained "three separate claims but only one amount of damages . . . ." Rather, the court concluded, consistent with White Oak's repeated and unequivocal attestations, that the demand contained but a single claim for wrongful termination. The court held: "What was implicit in White Oak's Bridgeport notice has now been made explicit in its Bridgeport demand, to wit: that its wrongful termination claim is based upon and subsumes within it the entire, allegedly unreasonable course of conduct that led up to it, including all of the costly, damaging, unreasonable acts by which White Oak claims to have been forced to endure and not be compensated for substantial project delay, to experience non-payment of monies due it under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for its completion by O & G [Industries]. Since that claim, though supported by multiple acts of alleged misconduct, is a single claim, it is appropriate to list for it a single amount of claimed damages in the demand for arbitration required by [§] 4-61 (b)."[15] Perhaps mindful of its earlier concern to properly "cabin" White Oak before the arbitration panel, the court ordered judgment to enter in favor of White Oak "on all remaining counts and claims of the department's complaint in this action, wherein the department seeks to enjoin them [from] further prosecuting or conducting further proceedings

---

[15] As the Supreme Court emphasized in *White Oak I*, the first arbitration panel in the Tomlinson arbitration addressed the scope of the submission set forth in White Oak's demand for arbitration and, like Judge Sheldon, concluded that it contained only a single claim of wrongful termination. The court echoed that panel's observation that "the breadth of White Oak's demand for arbitration raised the question as to whether White Oak was maintaining a claim or claims other than a claim for damages arising out of wrongful termination, despite the limitations of § 4-61" and that "[a]ny uncertainty on this point was conclusively eliminated . . . by the positions taken and representations made by White Oak in this arbitration and in the related court proceedings." (Internal quotation marks omitted.) *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 17 n.13.

*in the Bridgeport arbitration on . . . White Oak's
claim that the Bridgeport contract was wrongfully ter-
minated.*"[16] (Emphasis added.)

## B

In deciding the parties' respective applications to con-
firm and to vacate, correct or modify the arbitration
award, Judge Rittenband adopted that ruling as the
law of the case on issues regarding jurisdiction and
arbitrability. Application of the law of the case doctrine
involves a question of law, over which our review is
plenary. *Johnson* v. *Atkinson,* 283 Conn. 243, 249, 926
A.2d 656 (2007), overruled in part on other grounds
by *Jaiguay* v. *Vasquez,* 287 Conn. 323, 348, 948 A.2d
955 (2008).

The law of the case doctrine "is not written in stone
but is a flexible principle of many facets adaptable to
the exigencies of the different situations in which it may
be invoked. . . . In essence it expresses the practice of
judges generally to refuse to reopen what has been
decided and is not a limitation on their power." (Citation
omitted.) *Breen* v. *Phelps,* 186 Conn. 86, 99, 439 A.2d
1066 (1982). As our Supreme Court explained, "[n]ew
pleadings intended to raise again a question of law
which has been already presented on the record and
determined adversely to the pleader are not to be
favored. . . . But a determination so made is not nec-
essarily to be treated as an infallible guide to the court
in dealing with all matters subsequently arising in the
cause. . . . Where a matter has previously been ruled

---

[16] In so doing, the court fulfilled its gatekeeping function under § 4-61. As
our Supreme Court has held, "waiver of the state's sovereign immunity
under § 4-61 (a) is a condition precedent to the arbitral submission in § 4-
61 (b). . . . Accordingly, whether an arbitration is barred by the doctrine
of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not
for the arbitrators, to decide." (Citation omitted.) *Dept. of Transportation*
v. *White Oak Corp.,* supra, 287 Conn. 7 n.8.

upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citation omitted; internal quotation marks omitted.) Id.

In its memorandum of decision, the court refused to disturb Judge Sheldon's ruling on precisely which claims set forth in White Oak's demand for arbitration met the requirements of § 4-61 and, hence, properly were before the arbitration panel. Rather, the court quoted at length from that ruling and adopted it as its own. On our careful review of the demand for arbitration, we conclude that the court properly determined that the injunction action was correctly decided,[17] and thus adopted it as its own ruling on issues regarding jurisdiction and arbitrability.[18] We nevertheless take this opportunity to emphasize the distinction between the doctrines of res judicata and the law of the case.

As our Supreme Court observed, "the dividing line [between those doctrines] is not . . . whether the two

[17] To be clear, we concur with Judge Rittenband's assessment that the injunction action was properly decided. Even if we did not, we would be reticent to entertain a challenge to the propriety of that decision by White Oak. "This court routinely has held that it will not afford review of claims of error when they have been induced. [T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party." (Internal quotation marks omitted.) Snowdon v. Grillo, 114 Conn. App. 131, 139, 968 A.2d 984 (2009); see also E. Udolf, Inc. v. Aetna Casualty & Surety Co., 214 Conn. 741, 752, 573 A.2d 1211 (1990).

[18] Although a trial judge in a related proceeding is not required to adopt a prior interlocutory ruling as the law of the case; see, e.g., Danehy v. Danehy, 118 Conn. App. 29, 33 n.5, 982 A.2d 273 (2009); it is axiomatic that when a judge does so, he is obligated to follow it.

decisions are made in the same or different actions; the dividing line is in the nature of the first decision. If the first decision was final, in the res judicata sense, it cannot be disregarded under the doctrine of the law of the case. If, however, the first decision was not final, but was merely interlocutory, it falls within the doctrine of the law of the case." *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 403, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc); see also *Ratner* v. *Willametz*, 9 Conn. App. 565, 573, 520 A.2d 621 (1987) (judge not bound to follow rulings or decisions of another judge made at earlier stage of proceedings only when prior decision was interlocutory in nature). Thus, a paramount distinction between the doctrines of res judicata and the law of the case is that a judge in a related proceeding may depart from an earlier ruling only under the latter doctrine.

On the particular facts of the present case, that is a distinction without a difference. The trial court did not depart from Judge Sheldon's ruling on precisely which claims set forth in White Oak's demand for arbitration met the requirements of § 4-61 and thus were before the arbitration panel—the trial court adopted that ruling as its own on issues of jurisdiction and arbitrability.[19] We conclude that the court's decision to do so was proper.

## III

## WAIVER OF JUDICIAL REVIEW

White Oak nevertheless insists that the department waived its right to judicial review of questions of arbitrability. Its contention is twofold. First, White Oak alleges

---

[19] The trial court's adherence to Judge Sheldon's ruling on the issues of jurisdiction and arbitrability obviates the need to consider the applicability of the doctrine of res judicata. Cf. *Morganti, Inc.* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 20 Conn. App. 67, 71–73, 563 A.2d 1055 (1989) (on application to vacate arbitration award, doctrine of res judicata precluded

that the department "itself asked the arbitration panel to resolve the issue of arbitrability" and, through its conduct in the arbitration proceeding, consented to such a determination. Second, it claims that the department's failure to appeal from the judgment rendered by Judge Sheldon in the injunction action precludes further judicial review. Both claims are wide of the mark.

A

Consent

In support of their assertion that the department consented to the arbitration panel's resolution of issues of arbitrability, White Oak relies principally on *Bacon Construction Co.* v. *Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010). That precedent patently is distinguishable from the present case.

*Bacon Construction Co.* stands for the proposition that when the parties to an arbitration commenced under § 4-61 explicitly and unequivocally agree to submit the issue of arbitrability to the arbitrator, they waive judicial review of that issue. Following a dispute over a public works contract, the plaintiff in that case filed a notice of claim and a demand for arbitration against the defendant pursuant to § 4-61. In contrast to the proceedings in *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 5, the defendant in *Bacon Construction Co.* did not file an action in court for a permanent injunction to bar the arbitration; instead, the defendant "chose to forgo the route of judicial intervention and, instead, opted *affirmatively* to submit the issue of arbitrability to the arbitrator . . . ." (Emphasis added.) *Bacon Construction Co.* v. *Dept. of Public*

party from relitigating issue of arbitrability decided adversely on previous request for injunction against arbitration).

*Works,* supra, 294 Conn. 713. Our Supreme Court concluded that the defendant waived its right to judicial review by explicitly vesting the arbitrator with the authority to decide issues of arbitrability. Focusing on the unique factual nature of that proceeding, the court stated: "Specifically, the record reveals that the defendant, rather than objecting to or protesting the arbitrator's authority to decide the arbitrability of the dispute, actually embraced and availed itself of the arbitration proceedings to determine that issue. . . . [D]uring a preliminary telephone conference between the parties and the arbitrator, it was *the defendant* who requested that the arbitrator determine the issue of arbitrability. Thereafter, in its answering statement of October 12, 2006, the defendant stated: 'The actual issues in this proceeding are [the plaintiff's] delay and disruption claims, and [the defendant's] special defenses that: [the plaintiff's] claims are barred by the doctrine of sovereign immunity; [the plaintiff] released [the defendant] from its claims; and [the plaintiff] settled its claims with [the defendant]. *Those issues may be heard and fully and finally determined by this arbitration.'* . . . The defendant stated in the next sentence, which started a new paragraph: 'This approach is precisely what the parties anticipated at the outset of this arbitration.' We conclude that the defendant's unequivocal declaration that '[the] issues may be heard and *fully and finally determined* by this arbitration' . . . demonstrates that the defendant intended to be bound by the arbitrator's decision and constitutes a waiver of judicial review of the issue of arbitrability." (Emphasis in original.) Id., 710–11. The holding of *Bacon Construction Co.* thus is consistent with the Supreme Court's admonition that "[w]hen deciding whether a party has agreed that an arbitrator should have the sole authority to decide arbitrability, we must not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and

unmistakabl[e] evidence that they did so." (Internal quotation marks omitted.) *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 648.

Unlike the defendant in *Bacon Construction Co.*, the department here—as it did in *White Oak I*—filed an action in the Superior Court for a permanent injunction to bar the arbitration. Accordingly, the pertinent inquiry that remains is, as the court put it in *Bacon Construction Co.*, "did the parties engage in, or fail to engage in, conduct that precludes judicial review of the arbitrator's decision on that matter." *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 709–10. We answer that query in the negative.

It is undisputed that soon after the commencement of the arbitration action, counsel for the department contacted Ava R. Rogers, case manager for the association. In that January 4, 2002 letter, the department stated in relevant part that White Oak's "authority to demand arbitration of this matter is pursuant to . . . § 4-61 . . . only if certain requirements are met. . . . The statute . . . requires that the arbitration demand must 'include the amount of damages and the alleged facts and contractual or statutory provisions which form the basis of the claim'. . . . The claimant's demand for arbitration is jurisdictionally deficient because its notice of claim and demand for arbitration lack the information required by § 4-61. . . . Due to the pendency of this pivotal jurisdictional issue, the [department] respectfully objects to the association proceeding in any matter with this arbitration, and respectfully requests that all association proceedings . . . be put in abeyance at this time." When the association did not comply with that request, the department did not "forgo the route of judicial intervention" and affirmatively submit the issue of arbitrability to the arbitration panel; *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 713; rather, it commenced the injunction

action in the Superior Court challenging the panel's jurisdiction under § 4-61.

Throughout the arbitration proceeding, the department articulated its objection to the panel exercising jurisdiction over any claim other than that which Judge Sheldon determined had met the "narrow and limited exception to sovereign immunity"; *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 13; contained in § 4-61. Indeed, the department in 2005 filed with the arbitrators a motion to dismiss the arbitration predicated on precisely that ground after the Tomlinson arbitration panel ruled that no wrongful termination had transpired. Counsel for the department argued that "the problem [for White Oak] is the result in Tomlinson . . . . They lost on the termination claim. So, in Bridgeport they've substituted counsel and, after having rested their case and substituting counsel, what they are trying to do is start again with a different theory. But this cannot happen in fairness and under the case law." The department's counsel then proceeded to .quote extensively from the hearing before Judge Sheldon in the injunction action, in which counsel for White Oak steadfastly maintained that the only claim set forth in the demand for arbitration was one for wrongful termination. In addition, counsel for the department noted that "White Oak's position was reiterated in attorney Rosenthal's letter to Judge Sheldon dated October 1, 2003, quote: 'The department persists in mischaracterizing the White Oak arbitration claim as a delay claim for which White Oak would have the burden of alleging and proving specific delays caused by the department. However, White Oak has consistently maintained only a claim for the department's wrongful termination of its contract, and so it has no obligation to prove any department-caused delays.' " As a result, the department argued that "the case should be dismissed. There's been an utter failure [to prove] that there was a wrongful

termination. And without the termination, they can't go anywhere. They're dead. So, at this point my motion to dismiss becomes something in the nature of [a] motion for summary judgment."

Most significantly, the department at that time, which was day 57 of the arbitration, directly rebutted White Oak's assertion that the department had waived its right to judicial review of questions of arbitrability through its conduct in the arbitration proceeding, the very argument White Oak now advances in this appeal. On that day in May, 2005, counsel for the department responded as follows: "[White Oak] is making the argument that by challenging the jurisdiction of the arbitrators, we've conferred jurisdiction on you by consent. White Oak argues that if we tell you that you lack jurisdiction, you must have jurisdiction to determine whether or not you have jurisdiction and then also to decide all the claims on the merits. The argument makes no sense to me. By raising the special defense of sovereign immunity to you, we've strengthened our case for dismissing or enjoining the arbitration proceedings. That's our position. Here, we are dealing with § 4-61, a special statute which allows contract claims to be submitted to arbitration, again, only by the party having the contract with the state. This is not comparable to a submission to arbitration pursuant to a contractual written agreement to arbitrate. It's not the same thing. We are limited by the limited waiver of sovereign immunity conferred by § 4-61. It is very different from a contract to arbitrate.

"White Oak also argues that the state's waiver of immunity can be implied from our conduct in the arbitration. Respectfully, I think they're grasping at straws. The law is, 'there can be no waiver if the party being haled into court, far from consenting to or waiving objection to the court's action, advances strenuous opposition to it and steadfastly maintains that position thereafter.' What have we done? [We] wrote a letter to

the [association], a motion to dismiss in effect in the form of a letter dated January 4, 2002, contesting jurisdiction, which the panel will read. It's exhibit 40. We filed an answer contesting the jurisdiction of this panel to hear the claims which are being raised by White Oak in this arbitration.

"On the record before this panel I have protested as follows: Quote, 'The panel has no jurisdiction. These claims do not exist under § 4-61.' That's May 19, 2003. Quote, 'Plus, the contractor violated § 4-61 by not giving proper notice. The claim doesn't exist,' unquote. Same day. Quote, 'Without § 4-61, we wouldn't be here. All of the authority the panel has comes from that statute. That statute does not provide that a disappointed surety can bring an action against the state of Connecticut.' That's June 5, 2003, page 503. . . . Quote, 'We are operating under § 4-61, which is a prerequisite to the jurisdiction of this panel. . . . [That statute] says that the state waives its sovereign immunity . . . only to the extent that the contractor complies with this,' unquote, hearing transcript June 17, 2003, page 799 . . . . Quote, '§ 4-61 says this panel has no jurisdiction to grant any award if a claim hasn't been perfected; because the claim was never made properly, it is our position that the panel has no jurisdiction,' unquote. August 5, 2003 . . . . Quote, 'This panel has no jurisdiction except under § 4-61 and we have affirmative defenses to the claim based on that,' unquote. September 16, 2003. . . . Here, we have protested the jurisdiction of the panel by letter brief to the [association], by affirmative defenses raised to this panel, by repeated oral argument to this panel, by the institution of injunction proceedings in the courts of this state, and by repeated protests on the record."

The very next day, White Oak's newly assigned counsel, attorney Raymond A. Garcia, represented to the

panel that it possessed jurisdiction to decide the parameters of its own jurisdiction over the arbitration. He explained:

"Mr. Garcia: The arbitration rules provide in [r]ule 9 [that] you have jurisdiction to decide your own jurisdiction.

"The Chairman: Rule 9?

"Mr. Garcia: Rule 9.

"The Chairman: I'm looking at [r]ule [9; it] is mediation, unless I'm under the wrong rule.

"Mr. Garcia: You have the wrong rule. Rule 9, 'Jurisdiction. The arbitrators shall'—it's on page—here. 'The arbitrators shall have power to rule on his or her jurisdiction, including any objections with respect to the existence, scope, or viability of the arbitration agreement.' "[20]

The panel ultimately did not grant the department's motion to dismiss, and Garcia continued to press his claim that the panel was empowered under the association's arbitration rules to determine the scope of its own jurisdiction. On day 67 of the arbitration, held on July 13, 2005, Garcia went a step further, opining that the panel also possessed jurisdiction to decide whether White Oak even needed to comply with § 4-61, stating: "[U]nder [r]ule 9 . . . you have authority to decide whether you have jurisdiction over a claim. That is to say it is the panel's jurisdiction to decide that it can hear because we have asserted properly a claim before

---

[20] Although Garcia consistently referred to "[r]ule 9" during the arbitration, the substance of his remarks suggests that he actually was referencing the former rule R-8 of the association's arbitration rules, applicable at the time of the Bridgeport arbitration and which provides in relevant part: "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

you. So, you have the authority to decide, in our opinion, whether § 4-61's been complied with, and, more importantly, *you have the authority to decide whether it needs to be complied with*." (Emphasis added.) On day 127 of the arbitration, held on January 18, 2007, Garcia explained how the association's arbitration rules permitted the panel to reach claims beyond wrongful termination, such as liquidated damages: "[I]n July of 2001, for the very first time, the construction industry arbitration rules picked up a provision, which is [r]ule 9, which, for the first time, said arbitrators have jurisdiction to decide whether they have jurisdiction. Now, what does that mean? It means for the first time in an arbitration commenced under [association] rules, if there was a question about whether the arbitrators had a charter or a document giving them jurisdiction, the arbitrators could make that decision. It didn't have to go to the courts. . . . The jurisdiction question and any matter which arises in the arbitration can be decided by the arbitrators."

Garcia continued: "So, where are we here? Where we are is, the liquidated damages and the damages that arise under the Bridgeport contract is absolutely, unequivocally in the case and should be decided. . . . There is no charter for the arbitration, a document that gives you jurisdiction, at all unless you consider the state, by submitting it to you, consented and therefore initiated an arbitration. . . . [We could] get into a decision that may lead to a jurisdictional attack on part of the arbitration because there's no organic authority to decide the question. And I, on behalf of [White Oak], am not waiving that because under [r]ule 9 the panel has jurisdiction to decide whether it has jurisdiction."

Prior to issuing its award, the panel announced its agreement with Garcia's position. Speaking on behalf of the arbitration panel on day 135 of the arbitration, held on May 17, 2007, Chairman Stewart F. Kleinman,

Esq., indicated that the panel agreed with Garcia's claim that the association's arbitration rules vested the panel with the authority to decide the parameters of its own jurisdiction. The chairman first quoted from Judge Berger's trial court decision in *Dept. of Transportation* v. *White Oak Corp.*, Superior Court, judicial district of Hartford, Docket No. CV-06-4021904 (November 15, 2006) (42 Conn. L. Rptr. 385), which decision our Supreme Court reversed in *White Oak I*. In that decision, Judge Berger opined that "to the extent any issues impact the jurisdiction of the arbitration panel, that would be a question for the panel under its rules."[21] Id., 389. The chairman also quoted a footnote from Judge Berger's decision, in which he, in turn, quoted the association's arbitration rules for the proposition that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Internal quotation marks omitted.) Id., 390 n.9. After so doing, the chairman stated that "[t]his panel agrees with Judge Berger's decisions." The record before us reveals no "unequivocal declaration" on the part of the department expressing agreement with that position.[22] Contra *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 711.

---

[21] In *White Oak I*, our Supreme Court overruled that determination and held that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not for the arbitrators, to decide." *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7 n.8.

[22] White Oak relies on the following statement by counsel for the department on January 18, 2007: "You've got to conform to the submission. You have the right to decide your jurisdiction, but not beyond what the parties have agreed to place before you. What the parties have agreed to place before you is Bridgeport." We disagree that this statement reflects an unequivocal declaration of agreement with Garcia's position. First, the statement plainly is qualified, as it reminds the panel that it must conform to the submission, the parameters of which were determined by Judge Sheldon's ruling in the injunction action. Second, the statement must be read in light of the inartfully pleaded demand for arbitration, which, as Judge Sheldon found, contained all sorts of allegations regarding "the entire, allegedly unreasonable course

In May, 2008, our Supreme Court ruled in favor of the department in its appeal concerning the Tomlinson arbitration. Days later, on day 152 of the arbitration, counsel for the department alerted the arbitration panel to that decision and argued that it was dispositive of White Oak's attempt to obtain relief on claims other than wrongful termination. He stated: "Good afternoon. Before I talk about the evidence today, I want to state first something that may surprise you, but it's true. Under the authority of the new Supreme Court decision [in *White Oak I*], this case is over. Respectfully, it's not a matter of arbitrator discretion, it's a matter of jurisdiction, and we will detail this in our brief, but here is the basic. In its decision this week, the Supreme Court specifically addresses the Superior Court proceedings before Judge Sheldon and finds that the admissions made by . . . counsel [for White Oak] in the Superior Court and at the commencement of the arbitration were binding on White Oak, and that the arbitration hearings proceeded thereafter with the express limitations imposed by the court based on the admissions of counsel at that hearing, that both cases were termination claims. The [Judge] Sheldon proceedings are on the record, you've got them. The original demand, which formed the basis of White Oak's admissions and Judge Sheldon's order, was never amended in these proceedings. It's exactly what Judge Sheldon had before him.

---

of conduct that led up to it, including all of the costly, damaging, unreasonable acts by which White Oak claims to have been forced to endure and not be compensated for substantial project delay, to experience non-payment of monies due it under the contract, and ultimately to lose the contract and incur the obligation to indemnify its surety for its completion by O & G [Industries]." The far-reaching factual basis of White Oak's wrongful termination claim contained therein is illuminating when considering the department's statement that what was before the panel "[was] Bridgeport." Finally, that isolated statement stands in stark contrast to the department's frequent objection throughout the proceedings to the panel deciding the scope of their own jurisdiction, as detailed in this opinion.

"Under the authority of the Supreme Court, you cannot put the toothpaste back into the tube. The fact that Mr. Garcia did put on evidence of delays here does not save White Oak from being limited to a termination claim, which, by itself, of course, is a joke. The fact that he put . . . some delay evidence on doesn't save him because that's exactly what he argued at the Supreme Court in Tomlinson and [the court] said no. It doesn't matter that you put on delay evidence, you are out. Delay damages have been out of this case since that Superior Court hearing [before Judge Sheldon]. There was no termination here. There was no termination in Tomlinson, of course. And under § 4-61, this tribunal has no jurisdiction to determine anything other than a termination, which never happened. So, that's why I say the case is over."[23] The very next day, the department renewed its objection to the panel deciding the parameters of its own jurisdiction, remarking that "it is the position of the state . . . that there are serious jurisdictional limitations on what the panel at this point can do because of what happened below, that we are not dealing with a contract to arbitrate . . . we are dealing with a statute which imposes a limited waiver of sovereign immunity, and the Supreme Court [in *White*

---

[23] In the early days of the arbitration, the department plainly asserted that White Oak's demand for arbitration did not include a claim for liquidated damages:

"[The Department's Counsel]: Objection. Again, I'm just going to repeat, this doesn't relate to any delay claim that I can see. I have gone through the demand for arbitration. There doesn't seem to be any relevance at all but to confuse the panel.

"The Chairman: What about liquidated damages?

"[The Department's Counsel]: What?

"The Chairman: What about liquidated damages?

"[The Department's Counsel]: There is no claim that keys in this change order.

"The Chairman: Isn't one of their claims, though, is the liquidated damages clause isn't done correctly?

"[The Department's Counsel]: There is no claim before this panel on this subject."

*Oak I]* was real clear in its decision that that's a whole different ballgame from a contract [arbitration]."

In addition, the department's December 1, 2008 post-hearing brief articulates in detailed and repeated fashion the department's objection to the arbitration panel deciding the parameters of its own jurisdiction under § 4-61 and to the panel entertaining claims other than wrongful termination. In one section of the brief, titled "No jurisdiction under Connecticut General Statute[s] § 4-61," the department stated that "all of White Oak's newly concocted 'delay' and other claims also fail, by virtue, inter alia, of White Oak's submission of its claim as one for wrongful termination *only,* and by White Oak's failure after the Tomlinson award to seek to amend its Bridgeport claim to incorporate delay claims, despite its repeated representations to this panel that it would do so. Hence, [the department] respectfully urges to this panel that it has no jurisdiction to make any award on [those claims]. Under the compelling authority of [*White Oak I*], any finding to the contrary is subject to full and immediate review by the courts." (Emphasis in original.) In another section, titled "White Oak's claims must be dismissed in their entirety as this panel lacks subject matter jurisdiction," the department argues that "there is a huge jurisdictional issue in this case, and it is fatal to White Oak's claims: as [the department] has argued, [White Oak's] presentation of its claim as one for wrongful termination only and its failure even to attempt to amend its demand is fatal to the . . . additional claims which [it] attempted to interpose after January of 2005."

The department's brief also contained a section titled "[a]ny affirmative decision by this panel to exercise jurisdiction under § 4-61 is immediately reviewable by the [c]ourts." It stated in relevant part: "White Oak has repeatedly tried to lead this panel astray by arguing, erroneously, that such issues of jurisdiction are for the

panel to decide under the [association's] rules. That argument is dangerously wrong. . . . [T]hese proceedings are not a consensual, commercial arbitration where the panel, pursuant to an appropriate submission, has the right to determine the existence and the extent of its own jurisdiction. In [*White Oak I*], Chief Justice Rogers firmly rejected White Oak's erroneous argument (advanced in that forum by the same counsel, [a]ttorney Raymond Garcia), i.e., that absent agreement to the contrary, arbitrations conducted pursuant to § 4-61 (b) are governed by the rules of the [association], which provide that the arbitration panel shall have the power to [rule on its] own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Internal quotation marks omitted.)

Citing *White Oak I*, the department noted that the Supreme Court flatly rejected Garcia's assertion and held to the contrary that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not for the arbitrators, to decide." *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7 n.8. The department continued: "What does this mean for our purposes here? Simple: as White Oak has failed properly to preserve a claim under the requirements of § 4-61, *the State has not waived its sovereign immunity* and that claim is, therefore, not arbitrable, and this panel, therefore, has absolutely no jurisdiction over that claim. Also, as Chief Justice [Rogers] makes perfectly clear in her discussion above, here, as distinguished from a consensual commercial arbitration, *any improper assertion of jurisdiction by this panel over a claim which has not been properly preserved under § 4-61 is fully reviewable by the courts.*" (Emphasis in original.) Furthermore, the department's brief quoted extensively from the injunctive proceeding before Judge Sheldon, arguing that

"there is no subject matter jurisdiction for any delay claims, as White Oak explicitly and repeatedly limited its claim to one for wrongful termination and must now 'live and die' by that claim."[24]

In light of the foregoing, we simply cannot conclude that the department "explicitly," "affirmatively" and "unequivocally" submitted the issue of arbitrability to the arbitration panel, as was the case in *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 711, 713. The record does not substantiate White Oak's claim that the department engaged in, or failed to engage in, conduct that precludes judicial review of the arbitrator's decision on that matter. See id., 710.

B

Failure to Appeal Injunction Decision

White Oak also asserts that the department waived its right to judicial review of questions of arbitrability

---

[24] In its May 5, 2009 reply brief to the panel, White Oak averred in relevant part that "despite the department's arguments [in its posthearing brief] that it is immune from suit, the panel can rest assured that it has the authority to decide all the issues presented by White Oak." White Oak further represented that its demand for arbitration "according to Judge Sheldon is 'virtually identical in substance to the above-described Bridgeport notice,'" which representation failed to acknowledge Judge Sheldon's critical finding that "[w]hat is plainly different about the demand [compared to] the notice is that the demand lists all of its factual allegations as parts of a single claim of wrongful termination, whereas the notice, though incorporating the allegations from its 'Project Delays' and 'Non-Payment of Contract Claims' sections into its 'Wrongful Termination' section, listed them separately. Consistent with this change, the demand concludes by listing . . . a single amount of damages but does not suggest that that amount applies to multiple claims." In addition, White Oak's reply brief insisted that "[b]y submitting briefs and making the argument to the panel, instead of presenting this matter to a court, the department has given the panel the authority to rule on its own jurisdiction." White Oak also represented to the panel that "the courts will not review the panel's decision de novo, and instead will provide the limited review that is given to all arbitration decisions," and further stated, "[c]ourts will not review the panel's decision for errors of fact or law," and, "it [is] unequivocally clear that such review will be limited."

by failing to appeal from the judgment rendered by Judge Sheldon in the injunction action. Specifically, it claims that the department "failed to do anything to secure judicial review of the ruling that the arbitration panel had the authority to hear White Oak's claims. The department was obligated to appeal Judge Sheldon's ruling . . . if it wanted to preserve its right to have a court decide the issue of arbitrability." White Oak has provided no authority for that proposition, nor are we aware of any.

It appears that White Oak misunderstands the conclusion reached by the court in the injunction action. As we have discussed in great detail, the court specifically held that White Oak's demand for arbitration contained a single claim for wrongful termination and that—consistent with White Oak's steadfast attestations to the court—that claim "is based upon and subsumes" all other allegations contained therein. For that reason, Judge Sheldon concluded his memorandum of decision by stating that the court "hereby enters judgment for defendants White Oak and [the association] on all remaining counts and claims of the department's complaint in this action, wherein the department seeks to enjoin them [from] further prosecuting or conducting further proceedings *in the Bridgeport arbitration on . . . White Oak's claim that the Bridgeport contract was wrongfully terminated.*" (Emphasis added.)

The department did not appeal from that judgment, which confined the arbitration to White Oak's claim that it was wrongly terminated. Instead, the department proceeded to arbitrate that claim before the panel, reminding the panel over the course of many years that it lacked jurisdiction to entertain any other claims and that such conduct would be subject to judicial review. As Judge Sheldon noted during the injunction hearing in 2002: "[I]t doesn't strike me that what [White Oak] is doing is creating a right to collect damages for each

of the things that may have been wrong that predated [the termination], but merely to show a pattern of wrongdoing or misunderstandings or incorrect understandings as to what the alleged defalcations were on behalf of White Oak that lead to the turn in the road where they filed or made this demand of White Oak that is now claimed to be improper. If that's the situation, then your beef with them has to do with an effort to freight load into this termination claim a whole bunch of other things, which they may try to claim as consequential damages as a result of the termination, but which may, in fact, be other types of claims as to which they have not given notice. . . . *[I]f that's the nature of the problem, which I do understand, then isn't your remedy subject to your right of moving to vacate an award . . . . Why wouldn't that claim be the sort of thing that is subject to vindication on a motion to vacate an award? Because it would be something where here's a panel with jurisdiction over a claim, but a claim in which people are trying shamelessly to freight load all measure of other subsidiary claims for which they have absolutely no right of relief.*" (Emphasis added.) In seeking judicial review of an arbitration award predicated on claims that were not contained in the demand for arbitration, the department has done precisely that.

As the Supreme Court held in *White Oak I,* "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not for the arbitrators, to decide." *Dept. of Transportation* v. *White Oak Corp.,* supra, 287 Conn. 7 n.8. We therefore reject White Oak's claim that the department was obligated to immediately appeal the injunction ruling to preserve its right to judicial review.

## IV

### ARBITRATION PANEL DETERMINATION

Having concluded that the department did not waive its right to judicial review of questions of arbitrability,

we return to the primary issue in this appeal: Did the arbitration panel exceed its authority in rendering the arbitration award? The department maintains that, by adopting White Oak's proposition that the association's arbitration rules authorized the panel to determine the parameters of its own jurisdiction, and then further determining—contrary to Judge Sheldon's decision in the injunction action—that White Oak's demand for arbitration contained claims beyond that for wrongful termination, the panel exceeded its authority in rendering an award predicated on claims over which it lacked jurisdiction.[25] On our de novo review of the record before us; see *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 304 Conn. 646–47; we agree with the department.[26]

On day 135 of the arbitration, held on May 17, 2007, chairman Kleinman, speaking on behalf of the arbitration panel, stated that the panel agreed with White Oak's counsel that the association's arbitration rules vest the panel with the authority to decide the parameters of its own jurisdiction over an arbitration commenced under § 4-61. In its October 31, 2009 arbitration award, the panel acted on that authority as it rejected the department's interwoven claims that the panel lacked jurisdiction to determine which claims set forth in the

---

[25] In its appellate brief, White Oak argues that the panel's interpretation of the demand for arbitration was proper. That argument reflects a misunderstanding of the issue before us. The issue is not, as White Oak suggests, whether the arbitration panel properly applied § 4-61 (b) and concluded that the demand for arbitration contained additional claims beyond wrongful termination. Rather, the issue is whether, under the narrow exception to sovereign immunity contained in § 4-61 (b), the panel in the first instance was authorized to decide the parameters of its own jurisdiction over an arbitration commenced under that statute when the parties have not explicitly and unequivocally agreed to submit that issue to it.

[26] As discussed in part I of this opinion, Judge Rittenband, in analyzing whether the arbitration panel exceeded its powers, applied an improper legal standard. Accordingly, that analysis sheds little light on the issue before us.

demand for arbitration met the requirements of § 4-61 and that the panel possessed jurisdiction to decide only the wrongful termination claim. Contrary to the conclusion reached by Judge Sheldon in deciding the injunction action, the panel stated: "[T]his panel finds that the claim by White Oak was not only one of wrongful termination, but also for damages." The panel's independent analysis of the adequacy of White Oak's demand for arbitration was as follows: "White Oak's notice dated March 30, 2001 to the commissioner of [the department] and its demand for arbitration dated December 4, 2001 to the [association] contained claims for both wrongful termination and damages. At page 1 of the demand for arbitration, White Oak stated, 'White Oak seeks compensation for delays in the project, non-payment of contract amounts owed, non-payment of extra work and other impacts and wrongful termination of contract'. . . . Therefore, it is clear from the record that White Oak's arbitration was clearly within § 4-61. The department also asserted a claim for liquidated damages since the department claimed that White Oak did not complete the project on time and was in default of its contract with the department."[27]

The panel's determination of the scope of its own jurisdiction under § 4-61 runs directly contrary to the holding of our Supreme Court in *White Oak I* that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter

---

[27] We note that the record before us contains a February 22, 2008 letter from Garcia addressed to the association's case manager, which is directed to the panel's attention. That letter indicates that the panel at that time was concerned with whether White Oak was attempting to recover for claims not set forth in the demand for arbitration. As Garcia wrote, "[i]t is our understanding that 'the panel is having a problem with understanding the damage list when comparing it to [White Oak's] demand for arbitration.' . . . In response to the panel's question posed to Mr. Garcia as to 'whether or not he is now adding more items to his claim,' the answer to that question is unequivocally no. The damages identified in the damage list have been properly raised in the notice and demand . . . ."

for the courts, not for the arbitrators, to decide." *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7 n.8. This is not a case like *Bacon Construction Co.* v. *Dept. of Public Works*, supra, 294 Conn. 695, where the department opted to forgo the route of judicial intervention and explicitly and unequivocally agreed to submit the issue of arbitrability to the panel. This is a case in which the department (1) from the outset contested the arbitrability of the matter, (2) commenced an injunctive action that culminated in a judgment permitting the arbitration to proceed on the sole claim of whether "the Bridgeport contract was wrongfully terminated," (3) repeatedly objected to the panel's exercise of jurisdiction over any other claim throughout the arbitration proceeding and (4) extensively briefed its contention that the panel lacked the authority to exercise jurisdiction over such other claims.[28] Accordingly, the precedent of our Supreme Court commands

---

[28] The department's December 1, 2008 posthearing brief states in relevant part: "White Oak has repeatedly tried to lead this panel astray by arguing, erroneously, that such issues of jurisdiction are for the panel to decide under the [association's] rules. That argument is dangerously wrong. . . . [T]hese proceedings are not a consensual, commercial arbitration where the panel, pursuant to an appropriate submission, has the right to determine the existence and the extent of its own jurisdiction. In [*White Oak I*], Chief Justice Rogers firmly rejected White Oak's erroneous argument (advanced in that forum by the same counsel, [a]ttorney Raymond Garcia), i.e., that absent agreement to the contrary, arbitrations conducted pursuant to § 4-61 (b) are governed by the rules of the [association], which provide that the arbitration panel shall have the power to [rule on its] own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Internal quotation marks omitted.) The department's brief noted that the Supreme Court rejected Garcia's assertion, instead holding that "whether an arbitration is barred by the doctrine of sovereign immunity pursuant to § 4-61 (a) is a matter for the courts, not for the arbitrators, to decide." *Dept. of Transportation* v. *White Oak Corp.*, supra, 287 Conn. 7 n.8. The department concluded: "What does this mean for our purposes here? Simple: as White Oak has failed properly to preserve a claim under the requirements of § 4-61, *the State has not waived its sovereign immunity* and that claim is, therefore, not arbitrable, and this panel, therefore, has absolutely no jurisdiction over that claim." (Emphasis in original.)

that the question of arbitrability under § 4-61 was not a matter that the panel here was authorized to decide.

The panel's usurpation of the determination of precisely what in the demand for arbitration constituted an arbitrable claim disregarded not only the precedent of this state's highest court in *White Oak I*—a related case involving the very same parties—but also the judgment of the Superior Court in the injunction action. As we have detailed at length, Judge Sheldon, consistent with White Oak's steadfast and unequivocal attestations before him, concluded that White Oak's demand for arbitration contained "a single claim" for wrongful termination and, accordingly, permitted the arbitration to proceed on the sole claim of whether "the Bridgeport contract was wrongfully terminated."[29] In acting on White Oak's application to confirm the arbitration award and the department's application to vacate, correct or modify said award, the trial court adopted that decision as its own as to issues of "jurisdiction and arbitrability . . . ."[30]

"Arbitrators cannot conclusively determine their own jurisdiction or authority in such a manner as to give

---

[29] When White Oak reversed course before the arbitration panel and argued that the demand for arbitration contained claims other than wrongful termination, it undermined the purpose of the notice requirements of § 4-61, which is to prevent ambush of the state and the trial court. As our Supreme Court explained in *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 181–82, 9 A.3d 326 (2010), the legislature in 1991 amended § 4-61 "in response to the state's concern that the lack of provisions governing arbitration proceedings brought pursuant to § 4-61 (b) had created an uneven playing field . . . ." In particular, "state officials testified at committee hearings that under the existing scheme, some contractors would provide vague notices of claims . . . ." Id., 182. As a result, "the notice requirements as to both litigation and arbitration were changed to their present versions . . . . Although § 4-61 was reworded in 1991 to require somewhat greater detail as to claims, that rewording was designed to prevent ambushes, not to provide a vehicle to defeat valid claims . . . ." (Citations omitted.) Id., 182–83.

[30] White Oak does not argue in this appeal that Judge Rittenband improperly adopted Judge Sheldon's decision as his own on issues of jurisdiction and arbitrability.

themselves power to make an award covering matters not within the scope of the submission or the authority granted them by the parties."[31] 6 C.J.S., supra, § 160, p. 229; accord *New Britain* v. *AFSCME, Council 4, Local 1186,* supra, 304 Conn. 647 ("[i]t is well established that, absent the parties' contrary intent, it is the court that has the primary authority to determine whether a particular dispute is arbitrable, not the arbitrators"). This is an exceptional arbitration case, as the scope of the arbitral submission is not defined by a contractual agreement to arbitrate, but, rather, by a statutory waiver of sovereign immunity. See *Dept. of Transportation* v. *White Oak Corp.,* supra, 287 Conn. 7 n.8. In deciding the department's request for injunctive relief, Judge Sheldon delineated the confines of the arbitral submission under § 4-61 (b). When the arbitration panel departed from those confines and opted to decide the parameters of its own jurisdiction in contravention of *White Oak I,* it exceeded its authority. We therefore agree with the department that the panel lacked jurisdiction to award White Oak approximately $4.7 million in liquidated damages and $4.9 million in prejudgment interest after it determined that no wrongful termination transpired.

---

[31] We note that immediately after the Tomlinson panel concluded that no wrongful termination occurred, the department filed a motion to dismiss the Bridgeport arbitration. In response, White Oak repeatedly informed the panel that it intended to amend its demand for arbitration. On January 19, 2005, White Oak's counsel, attorney Michael S. Torre, stated: "I see that [the department] has included the decision from the Tomlinson panel as, I'm sure, part of the basis for the motion [to dismiss]. We have contemplated and planned on making an application to amend the demand for arbitration in light of what happened in that proceeding." Later in that proceeding, Garcia—White Oak's new counsel following the conclusion of the Tomlinson arbitration—stated that "on behalf of White Oak we're going to request the panel to . . . allow an amendment of the demand consistent with the breadth of the § 4-61 notice to the extent one doesn't cover the other. . . . We are going to apply to amend, which, as we understand, is a matter of discretion anyway." Despite those representations, it is undisputed that White Oak never filed an amended demand for arbitration.

In concluding, we return to the colloquy between White Oak's counsel and the court at the injunction hearing on March 3, 2003, which predated by more than six and one-half years the arbitration panel's finding that no wrongful termination transpired:

"The Court: Let's just imagine that I say, okay . . . there's enough here [to satisfy § 4-61]. You've alleged a termination. And you walk through the [arbitration] door and a whole bunch of subsidiary issues that you might have claimed under the termination on some basis, not disclosed in any way in your demand, are raised by you, but you can't prove a termination.[32]

"Mr. Rosenthal: Then I suppose we'll be in a lot of trouble at that point in terms of our claim.

"The Court. Yeah.

"Mr. Rosenthal: Yeah.

"The Court: And I'm thinking—I'm listening to the arguments that have been made by your opponent here and, frankly, it makes me wonder whether he wishes to persist with this claim because if he is so certain that this was not a termination . . . then you're dead in the water—

"Mr. Rosenthal: Your Honor, I don't disagree with your perception."

For the reasons discussed herein, we concur. We, therefore, conclude that the court improperly denied

---

[32] Six months after Judge Sheldon ruled that White Oak's demand for arbitration contained "a single claim" for wrongful termination and, accordingly, ordered the arbitration to proceed on the sole claim of whether "the Bridgeport contract was wrongfully terminated," White Oak represented to the arbitration panel that its demand provided the panel with a "Chinese menu of different options." As White Oak states in its appellate brief, "[t]he 'Chinese menu' analogy was a consistent theme. White Oak made it very clear to the panel that it was offering a list of possible damages from which the panel could pick and choose."

the department's application to vacate, correct or modify the arbitration award.

The judgment is reversed and the case is remanded with direction to vacate the arbitration award.

In this opinion the other judges concurred.

